VILLAGE OF ONTARIO, APPELLANT, *v.* WHITMAN, APPELLEE.

[Cite as Ontario v. Whitman (1973), 47 Ohio App. 2d 81.]

(No. 73AP-203—Decided August 21, 1973.)

*Mr. Max K. Chilcote,* for the village of Ontario.

*Mr. William J. Brown,* attorney general, and *Mr. A. Mark Segreti, Jr.,* for the director of environmental protection.

TROOP, P. J. The village of Ontario, some time prior to January 11, 1972, sought a permit to discharge effluent from a waste water treatment plant into Touby's Run, which it proposed to construct, the flow from the plant being properly described as a discharge into the waters of the state. At the time of the application, the water pollution control board (WPCB) was the controlling authority in Ohio. The vicissitudes of the application were many and varied during the existence of WPCB, and the transition to control by the environmental protection agency headed by a director, and culminated with a beginning point, for purposes of this review, which was the order of the director addressed to the village of Ontario as approved January 8, 1973.

As required, the director outlined his findings in connection with the January 8, 1973, order. The findings note a request by the village, dated January 16, 1972, for a hearing, and that an "adjudicative hearing" in response thereto was held July 28, 1973. Under the "orders" section of the director's communication to the village is a denial of the requested permit as well as some specific requirements to be met, "until such time as the village shall either":

"* * * enter into an agreement with the city of Mansfield for treatment of the village's sanitary sewerage or (2) make any other acceptable agreement or arrangement for the treatment of its sanitary sewerage including the construction and operation of the facility at Friday Farm or elsewhere within the village or outside it so long as such facility conforms to all of the requirements for such a facility imposed by law and have been approved by the Department of Health and has an acceptable point of discharge so that the water quality standards applicable to the receiving waters of the state shall not be violated."

The order concluded with other directions as to construction time and other necessary compliance with rules. After some difficulties or misunderstanding, the village of Ontario perfected an appeal from the order of the director to the environmental board of review. The notice of appeal is indicated as having been filed February 1, 1973. Hearings were scheduled and held by the board. The order of the board was issued under date of April 24, 1973. It is from this order that appeals were taken to this Court of Appeals, pursuant to R. C. 3745.06, by both the director, notice of appeal filed May 24, 1973, and the village of Ontario, notice of appeal filed May 25, 1973. Both have filed briefs and assignments of error addressed to the decision of the board.

The board supplied extensive findings of fact as required by R. C. 3745.05. It is the order of the board, however, which provides the focal point of the assignments of error, of both appellants, and the center of interest in this discussion. Section VIII of the document entered April 24, 1973, points up two specific conclusions reached by the board, the first of which is the refusal by the board to re-

verse the order of the director denying the permit sought by the village. The board position, upon which two members agree specifically and the third generally, on the first point, reads as follows:

"* * * This board ruled at the hearing that it could not entertain a motion to reverse as it lacked the power to reverse under Sec. 3745.05 of the Revised Code * * *. The board is without power to issue a permit under that section, see our order in *Semonin et al.* v. *Whitman et al.*, * * *. The board must do what is required under Sec. 119.07, within the limits of Sec. 3745.05 of the Revised Code. This does not mean the order of January 8, 1973 is simply to be reversed and an opposit order, granting a permit, entered. Instead, it means that the order of January 8, 1973 must be vacated."

The second item in the order vacates the order of the director and directs a hearing as requested by the village of Ontario within fifteen days from one day following receipt of the board's order by the director.

This two-pronged order of the board is the object of the assignments of error advanced by both appellants in support of each appeal from the order of the board. The Attorney General advances four formal assignments of error in support of the director's appeal, being basically the same as those upon which the appeal in the case of the *Village of Williamsburg* v. *Director of Environmental Protection*, Court of Appeals for Franklin County, No. 73AP-140, August 23, 1973, was predicated. The Attorney General urges that R. C. 119.07 is "directory" as to the fifteen-day notice, that the board's order threatens to vitiate over a year's progress in pollution abatement orders, and that the failure to give the notice required by R. C. 119.07 does not invalidate the agency's order. The fourth assignment of error states that the board's order is in conflict with the "public relations" statute, R. C. 3745.07.

The village of Ontario simply contends that the order of the board is contrary to law and against the manifest weight of the evidence. These bare bones assignments of error move into perspective when counsel looks to R. C. 3745.04 and 3745.05 and expresses his conclusions as to the

meaning and significance of the sections as to board authority. At page nine of his brief, counsel states as follows: "* * * The Review Board's reasoning that it is without power to reverse the Director by ordering him to 'perform an act' results in an inconsistent rule which provides that the Review Board can deny or issue a permit in a de novo hearing, but is unable to deny or issue a permit in considering an appeal from the Director. This writer is appreciative of the Review Board's modesty in rejecting power granted to it by the legislature.

"The Review Board's reasoning leads to another result which cannot be reasonably supported in that it views itself as the 'procedural watchdog' of the Director of Environmental Protection. Under the Review Board's theory, its only lawful responsibility to the public is to assure that the Director observes an applicant's procedural rights completely, disregarding substantive rights. If the Director fails, refuses, or neglects to observe the procedural rights and violates due process of an applicant, the Review Board, after appeal, can vacate the Director's orders and sends the applicant back instructing the Director to be procedurally correct this time. This concept reasonably foresees an applicant repeatedly reprocessing his application before the Director again, again, and again, until such time that the Director has been procedurally correct. This reasoning also takes the position that it is of no legal consequence that the Director has acted either 'unreasonable or unlawful' in denying an applicant."

In the decision of this court in the *Village of Williamsburg* v. *Director of Environmental Protection, supra,* attention was directed to the authority of the environmental board of review to adopt rules, under R. C. 3745.03, to govern procedure to be followed in its hearings. Rule EBR9-05 was adopted, which provides that when the board vacates an order of the director, and returns it:

"* * * the Board shall specify in its order the time period within which the Director shall act upon the order. Except in unusual circumstances, such time period shall not exceed (30) days. In the event that the Director is of the opinion that the time period is insufficient to take ap-

propriate action on the matter vacated and returned, the Director shall apply to the Board for an extension.''

As this court said in the *Williamsburg* decision, the director is obliged to know the rules promulgated by the board. The rule quoted authorizes the board to set a time limit, but also provides the director a chance for relief if the time requirement is onerous.

The position taken in the *Williamsburg* decision is adopted as to this appeal, both as to the director's assignments of error I, II, and III, respecting R. C. 119.07, and also assignment of error IV, which urges that R. C. 3745.07 must be respected. Such section deals primarily with the public relations aspect of environmental protection orders and general complaints of parties only indirectly interested in an appeal, and not directly parties thereto; therefore, these assignments of error offered by the director are overruled.

Environmental protection concepts are, legislatively speaking, relatively new. The basic concepts and the powers of the director are supplied by R. C. 6111.01, and so forth, and the creation of the agency, including the environmental board of review, is found in R. C. Chapter 3745. The basic statutes and R. C. Chapter 3745 were all effective October 23, 1972. All of this legislation being relatively new, experience with appeals procedure thereunder is entirely lacking. For this reason, this court prefers not to risk getting lost in a maze of technicalities, but prefers to examine the appeals procedure supplied by the legislature with the hope of pointing the way to a better understanding thereof.

With a view to determining the validity of the position of the board, that it could not reverse the order of the director, an examination of the applicable statutory provisions becomes necessary. It first should be said that the legislature created an ''agency'' by passing R. C. Chapter 3745. The language in R. C. 3745.01 reads:

''There is hereby created the environmental protection agency, headed by the director of environmental protection. The agency shall, under the supervision of the director, administer the laws and regulations pertaining to the pre-

vention, control, and abatement of air and water pollution, public water supply, comprehensive water resource management planning, and the disposal and treatment of solid wastes, sewage, industrial waste, and other wastes.''

The remaining portion of the section provides what the director ''may'' do. It is noteworthy that the authority to issue permits is not contained in this group. Authority for the director to grant permits comes from R. C. 6111.06 (A), which also provides that the issuance of permits ''shall be subject to and governed by Sections 119.01 to 119.13 and Chapter 3745 of the Revised Code.''

Subparagraph (B) of that section states that the director ''shall not'' refuse to issue a permit, nor modify or revoke a permit, unless the applicant has been afforded an opportunity for a hearing.

R. C. Chapter 3745 is therefore significant in the appeals procedure. R. C. 3745.04 provides for appeals to the environmental board of review. The first paragraph sets out who may appeal and the second paragraph defines the subject of appeal, being an ''action'' or an ''act'' including:

''* * * the issuance, denial, modification, or revocation of a license, permit, lease, variance, or certificate, for the approval or disapproval of plans and specifications pursuant to law or regulation thereunder.''

Further, the section provides that '' [a]ny person who was a party to a proceeding before the director may participate in an appeal'' to the environmental board of review for an ''order vacating or modifying the action of the director * * * or ordering the director * * * to perform an act.'' Following this portion of the section is a most unusual closing sentence, which reads:

''* * * The environmental board of review has exclusive original jurisdiction over any matter which may, under this section, be brought before it.''

It would appear that the policy of the environmental board of review, as announced in its order noted *ante*, respects the portion of the law which speaks of its authority ''vacating or modifying'' the action of the director and overlooks the broader power giving the board ''exclusive

original jurisdiction over any matter" which may be brought before it.

The significance of this broad power becomes apparent when it is considered that R. C. Chapter 3745 created the "agency" and gave to the "agency" the power to regulate and prevent certain pollution practices "under the supervision of the director." The language employed may avoid a clear-cut definition of just what or who constitutes the agency, but basic power is conferred upon the director and his staff, which semantic fact indicates that the composite director and staff is the "agency" contemplated by legislative enactments.

This conclusion is further supported by the comprehensive function of review given the board under R. C. 3745.05. Two kinds of hearings may be provided by the board—the first, where the director has conducted an "adjudication hearing," and the second, where he has not. The primary distinction between the two classes of hearings lies in that statutory provision, which states that where there has been an adjudicative hearing the board of review reviews the record of the hearing before the director, the admission of additional evidence, newly discovered, being within the discretion of the board. In the instance where no adjudication hearing is held, the board shall *"conduct a hearing de novo on the appeal."* In a *de novo* hearing, the board, upon request, "may require the attendance of witnesses and the production of written or printed materials."

The fact pattern in the instant case is troublesome. The village of Ontario did have a hearing, before the WPCB, from which it sought an appeal, but was advised that such could not be granted unless its permit had first been denied. Further efforts to accomplish an appeal were met by the order of the director of January 8, 1973. Peculiarly, the village had a hearing, but not before the director in advance of his order denying the applicant a renewal of its permit.

The order of the board of review indicates that it concluded that there was not an effective hearing, the one before WPCB being a nullity, and none before the director

because he had adopted the order of the WPCB. He should have had a hearing before he denied the permit, as required by statute. In either event, under R. C. 3745.05, the board was empowered to hold a hearing *de novo*. In such an instance, of a hearing *de novo*, it is beyond contemplation to conclude that the authority conferred on the board was restricted by the phrase "vacating or modifying the order" to a mere vacation of the director's order and the ordering of a hearing. If the board of review has authority to conduct a hearing from scratch, it would seem ridiculous to conclude that it was confined as narrowly as its order suggests. It should be remembered that the term modify not only suggests to moderate, or create a more temperate or less extreme situation, but the term is also synonymous with the word change, which is to make a basic or important adjustment.

It is true that in R. C. 3745.06, which provides for an appeal to this Court of Appeals, the court is authorized to reverse, vacate, or modify, but that fact does not necessarily imply that the board is limited to modifying in a casual or procedural sense. Such is not consistent with a grant of "exclusive original jurisdiction over any matter which may, under this section, be brought before it."

R. C. 3745.06 provides for appeals to this Court of Appeals by any party adversely affected "by an order of the environmental board of review." In case of such an appeal, the section requires that the board shall prepare and file in the court the complete record of proceedings out of which the appeal arises, including any transcript of any other evidence which has been brought before the board. It is submitted that such a provision contemplates more than a record showing compliance, or lack of it, with the procedural requirement of notice, and so forth, by the director. It is, on the contrary, convincingly suggestive that the board of review has taken some significant action with respect to an order of the director, at least to the extent of "modifying" an existing order, making it at least more temperate or less extreme, but moving in the direction of resolving the question involved in the appeal as it stands before the board on its merits.

It is emphasized again that while R. C. 3745.05 simply states that the board may issue an order "vacating or modifying" the action appealed from, the far more significant and far-reaching authority of the board arises from the basic grant of power found in R. C. 3745.04, specifically, in addition to vacating or modifying, "ordering the director * * * to perform an act," such as to issue a permit when the board finds the order of the director to be "unreasonable and unlawful" (R. C. 3745.05). The test of "unreasonable and unlawful" provides a much broader base upon which to predicate an order of the board of review than that which guides the director—that of reliable, probative and substantial evidence (R. C. 119.12). Such an order would, of course, be subject to review in an appeal to this Court of Appeals.

The assignments of error advanced by the appellant village of Ontario are well taken and are sustained, the order of the environmental board of review is vacated and the cause is remanded to such board for further proceedings according to law and in conformity with this decision.

It should be understood that a rehearing is not required, but that a reconsideration of the matter upon the present record with a view toward a decision on the merits would be sufficient.

*Judgment reversed and cause remanded.*

REILLY and GESSAMAN, JJ., concur.

GESSAMAN, J., retired, of the Court of Common Pleas of Franklin County, assigned to active duty under authority of Section 6(c), Article IV, Constitution, sitting by designation in the Tenth Appellate District.