BROADWAY CHRISTIAN CHURCH ET AL., APPELLANTS *v.* WILLIAMS, DIRECTOR, ET AL., APPELLEES.

(No. 37329—Decided August 10, 1978.)

*Ms. Ann Aldrich, Mr. Joseph P. Meissner* and *Mr. Jeffrey H. Olson,* for appellants.

*Mr. Victor E. DeMarco* and *Mr. James C. Sennett,* for appellee Republic Steel Corporation.

*Mr. William J. Brown,* attorney general, *Ms. Colleen K. Nissl* and *Mr. Joel S. Taylor,* for appellee Ned .E. Williams, director, Environmental Protection Agency.

244

PRYATEL, J. This matter comes before this court as an appeal pursuant to R. C. 3745.06 and O. A. C. 3746-13-01 from the December 17, 1976, decision of the Environmental Board of Review. The following facts reveal the history of this litigation.

On October 23, 1974, Republic Steel Corporation (hereinafter Republic) filed an application for a permit to install a new coke battery (Battery No. 1) at its Cleveland district plant and simultaneously began construction of this facility. On December 23, 1975, the Director of the Ohio Environmental Protection Agency (hereinafter Director and O. E. P. A. respectively) denied Republic's application as did the city of Cleveland and the United States Environmental Protection Agency. Subsequently, Republic filed a timely request for an adjudication hearing in accordance with O. A. C. 3745-47-13. That hearing was never conducted because on July 7, 1976, Republic and the Director entered into a Consent and Abatement Order. The Director granted Republic permission to operate Battery No. 1 as long as its operation did not violate the emission standards specified in its order. The Director waived the necessity for obtaining a permit to install Battery No. 1 and decreed that Republic would not be subject to enforcement action for its failure to obtain such a permit, provided that Republic comply with a strict schedule and issue quarterly progress reports. Finally, an appropriate system for controlling pushing cycle emissions must be installed no later than September 1, 1978.

Subsequently, on August 6, 1976, the Broadway Christian Church, the Broadway United Methodist Church, the Broadway Retirees' Fellowship, the Southwest Civic Association, the Forest Park Civic Association, and the Northern Ohio Lung Association (hereinafter referred to collectively as Broadway) appealed to the Environmental Board of Review (hereinafter the Board), challenging the validity of the Consent and Abatement Order. After an extensive hearing de novo,[1] the Board ruled that the Consent and

[1]R. C. 3745.05 and O. A. C. 3746-7-01 require the Board to conduct a hearing de novo on appeal if the Director did not hold an adjudication hearing. *Union Camp Corp.* v. *Whitman* (1975), 42 Ohio St. 2d 441.

Abatement Order was unlawful because R. C. 3704.03(S) does not expressly authorize the Director to enter into consent orders. The Board accordingly vacated the Director's consent decree and ordered him to issue Republic a conditional operating permit incorporating the terms and conditions of Order No. EPA-5-77-A-3 of the United States Environmental Protection Agency to the extent that the terms of that order relate to Battery No. 1. Broadway has appealed to this court challenging the validity of the Board's ruling. Republic and the Director have filed cross-appeals. Assignments of error will be consolidated where similar issues are presented.

*Republic's Sole Assignment of Error:*

"The board erred in holding that the director had no authority to issue the consent and abatement order herein."

*Director's Assignment of Error No. 1:*

"The Environmental Board of Review erred in holding that the Director of Environmental Protection has no authority to issue consent orders pursuant to enforcement authority granted by section 3704.03(S), Revised Code."

The Board held that the Consent and Abatement Order was unlawful because "nowhere in R. C. 3704.03(S) is the express power given to the Director to enter into consent orders."[2] That statute reads as follows:

"Sec. 3704.03 *Powers of director of environmental protection.*

"The director of environmental protection may:

"* * *

"(S) Issue, modify, or revoke orders prohibiting or abating emissions which violate applicable emission standards, or requiring emission control devices or measures in order to comply with applicable emission standards. In the making of such orders the director shall give consideration to, and base his determination on, evidence relating to the technical feasibility and economic reasonableness of compliance with such orders, and their relation to benefits to the people of the state to be derived from such compliance."

---

[2] Broadway concedes that the Director does have authority to issue consent orders; however they object to the particulars of the consent order at issue here.

In reaching its conclusion, the Board noted (1) that R. C. 3704.03(S) contains neither the word "consent" nor the phrase "consent order"; (2) that although R. C. 3745.01 lists a variety of documents which can result from the Director's orders, it does not mention consent orders; and (3) that although 3704.03(T) authorized the Director to exercise all incidental powers required to carry out Chapter 3704 of the Revised Code, it does not expressly grant the power to enter into consent orders. We do not agree with the Board. In our judgment, its ruling elevates form over substance, R. C. 3704.03(S) specifically authorizes the Director to "[i]ssue * * * orders prohibiting or abating emissions which violate applicable emission standards.³ The Consent and Abatement Order at issue here is such an order. It permits Republic to continue operations while constructing necessary emission controls which would abate any further violations. The absence of the word "consent" in R. C. 3704.03(S) is not of such legal gravity that an entry by consent is forbidden. In *Ontario* v. *Whitman* (1973), 47 Ohio App. 2d 81, the Franklin County Court of Appeals considered the question whether the Board could "reverse" an order of the Director since the statute authorizing appeals to the Board, R. C. 3745.04, does not contain any express language permiting such action.⁴ The court concluded that the Board does have the power to reverse orders of the Director:

"* * * [u]nder R. C. 3745.05, the board was empower-

---

³It should be noted that the Director's regulation codified at O. A. C. 3745-47-19-(D) specifically refers to consent orders. That provision reads as follows:

"(D) If, at a prehearing conference or at any other time prior to the termination of the hearing, the parties agree to a settlement, the Hearing Examiner may recommend in writing to the Director that the settlement terms be adopted as a final order; *or the parties may prepare a suggested consent order,* signed by the parties other than the Agency, which may be submitted along with the file to the Director for adoption after consideration of all materials in the file." (Emphasis added.)

⁴R. C. 3704.03 authorizes "[a]ny person who was a party to a proceeding before the director [to] participate in an appeal to the environmental board of review *for an order vacating or modifying the action of the director of environmental protection.*" (Emphasis added.)

ed to hold a hearing *de novo*. In such an instance, of a hearing *de novo*, it is beyond contemplation to conclude that the authority conferred on the board was restricted by the phrase 'vacating or modifying the order' to a mere vacation of the director's order and the ordering of a hearing. If the board of review has authority to conduct a hearing from scratch, it would seem ridiculous to conclude that it was confined as narrowly as its order suggests. It should be remembered that the term modify not only suggests to moderate, or create a more temperate or less extreme situation, but the term is also synonymous with the word change, which is to make a basic or important adjustment." *Id.*, at 88.

In the same vein, it is too confining to suggest that the Director may not issue consent orders. R. C. 3704.03(S) contains a broad grant of power to the Director to issue orders. The legislature did not specify or limit what types of orders the Director may or may not issue as suggested here by Broadway. Therefore, the use of the word consent, admittedly not in the statute, does not invalidate the order.

The Franklin County Court of Appeals addressed another similar question in *Columbia Township Trustees* v. *Williams*, unreported, Case Nos. 76 AP-107, 76 AP-109, 76-AP-153, decided August 5, 1976. In that case, the Board vacated the Director's issuance of a permit to install a sanitary landfill because the O. E. P. A. did not have legal authority to issue such a permit. The applicable statute, R. C. 3734.02 (C), did, however, require prior approval of the Director before establishing a solid waste disposal site. The court rejected the Board's literal approach to determining the powers of the Director and concluded that the permit to install was issued in conformity with applicable law:

"First, contrary to the finding of the EBR, we find nothing violative of the law in the issuance by the director of what the EPA terms a 'permit to install.' Although R. C. 3734.02 does not specifically refer to any such permit, the adoption of a regulation entitled EP-30 by this agency, which provides for these installation permits, is not per se offensive to this section of law." *Id.*, at 9.

Similarly, in the case at bar, the Director issued a consent order in furtherance of his statutorily imposed powers.

In this case, it is necessary to review the facts before the Director and the options available to him. One alternative was to conduct an adjudication hearing on the proposed denial of a permit to install which would inevitably have resulted in a final denial since Republic could not meet the requirements specified in O. A. C. 3745-31-05. The Director would have been compelled to institute court action since the Director does not have the authority to levy monetary penalties or invoke contempt sanctions. *Cf.* R. C. 3704.06. The Director would be forced to seek injunctive relief in order to close down Battery No. 1. A court, sitting in equity after considering the economic, technological, and health aspects, in all probability would issue an order allowing Republic a reasonable period of time to comply with environmental regulations.[5] Since Battery No. 1 was already reducing the level of air pollutants from those produced by Battery No. 5 that it replaced, it is quite likely

---

[5]The economic impact of shutting down Battery No. 1 would be severe, for the city of Cleveland, its citizens, and for Republic. (Certified Record Item No. 6). The closing of Battery No. 1 would necessitate the lay-off of 1247 Republic employees, a loss of $18,000,000 in annual salaries. In addition, 997 other jobs would be lost particularly in retailing and other nonmanufacturing areas throughout the metropolitan Cleveland area as a direct result of the lay-off of Republic employees. The closing of Battery No. 1 would also cause the following annual revenue losses: $45,000,000 in the Cleveland metropolitan area in total generated income; $13,140,000 in the Cleveland metropolitan area in retail sales; $180,000 in income tax to the city of Cleveland; and $260,000 in sales taxes. (Affidavit of Franklin H. Maris, director of Research and Planning of the Greater Cleveland Growth Association.) Such a shut down would cost Republic approximately $1,255,800 per month. (Battery No. 1 will produce approximately one-sixth of the coke used at the Cleveland District Works which in turn accounts for about one-sixth of the total steel production in Cleveland). The interim cost to the public of permitting Republic to operate Battery No. 1 *while* constructing necessary emission controls is far less. Indeed, the record reflects that the replacement of Battery No. 5 with Battery No. 1 will lead to a significant decrease in emissions thus constituting progress toward the attainment of national ambient air quality standards and diminishing any health hazards, and that by September 1, 1978, Battery No. 1 will be operating in accordance with applicable laws.

that the court would give Republic the time necessary to install additional emission controls. Thus, it would be much better for all if Republic without the necessity of a hearing agreed (1) to a consent order, (2) to deliver progress reports and (3) to accept a deadline of September 1, 1978, for full compliance. To the Director, this approach was preferable to protracted hearings followed by appeals, thus delaying a successful conclusion far into the future.[6] By issuing a consent order, the Director attempted to accomplish within a reasonable space of time what Republic would have eventually been required to do after a long period of litigation. The consent order issued pursuant to R. C. 3704.-03 (S) was a legitimate enforcement tool designed to remedy violations of R. C. 3704.05.

In *Cleveland Electric Illuminating Co.* v. *Williams,* unreported, Tenth Appellate District, case Nos. 76 AP-929, 76 AP-938, decided December 18, 1977, the Franklin County Court of Appeals recognized that the Director has broad discretionary enforcement options and that he need not necessarily seek an injunction pursuant to R. C. 3704.-06 to combat violations of emission standards. The court noted that the Director "is given a great deal more effective enforcement weapon by a holding that no further variance is possible, which means that the operator is acting illegally if the emission from his plant exceeds the applicable air quality regulations. More prompt and effective measures can be taken for enforcement under penalty of

---

[6]R. C. 3704.03(S) and (T) vest the Director with the discretion to issue enforcement orders. Those sections read as follows:

"R. C. 3704.03 Powers of director of environmental protection.

"The director of environmental protection may:

"(S) Issue, modify, or revoke orders prohibiting or abating emissions which violate applicable emission standards, or requiring emission control devices or measures in order to comply with applicable emission standards. In the making of such orders the director shall give consideration to and base his determination on, evidence relating to the technical feasibility and economic reasonableness of compliance with such orders and their relation to benefits to the people of the state to be derived from such compliance.

"(T) Exercise all incidental powers required to carry out sections 3704.01 to 3704.11 of the Revised Code."

severe monetary fines or threat of shut down to achieve, at the earliest possible time, attainment of properly adopted air quality standards." *Id.*, at 14.

Accordingly, we hold that the Board erred when it held that the Director does not have the authority to issue consent orders. Republic's sole assignment of error and the Director's Assignment of Error No. 1 are therefore sustained.[7]

*Director's Assignment of Error No. 2:*

"The Environmental Board of Review erred in holding that the Director of Environmental Protection must hold evidentiary hearings before settlement of administrative litigation through the issuance of an enforcement order pursuant to Section 3704.03(S), Revised Code."

In its joint findings of fact, the board found that:

"R. C. 3704.03(S) requires that the Director give consideration to evidence relating to technical feasibility, economic reasonableness and the benefits to the people of the State. However, the consent order itself states that no evidence has been tried.[8] Thus the consent order is on its face inconsistent with and in violation of the very statute upon which it is supposed to be based." Finding of Fact No. 30.

R. C. 119.06(C) provides that adjudication orders are invalid unless opportunity for a hearing is afforded except when the rules of the agency promulgating the order or the statutes pertaining to such agency specifically give an appellant a right of appeal to a higher authority within the agency or to another agency.

Such is the case here. For those who wish to challenge the order, R. C. 3745.07 gives an aggrieved party such as Broadway (who was not a party to the consent decree), the right to appeal to the Board while R. C. 3745.05 and O. A.

---

[7] In so ruling, we do not necessarily release Republic from the necessity of applying for a permit to operate after September 1, 1978.

[8] The consent order contained the following language:

"Republic and the Director agreed to resolve all issues raised in this adjudication proceeding as set forth in this Consent and Abatement Order. It is acknowledged that no evidence has been submitted and no issue of law or fact has been tried."

C. 3746-7-01 provide for a hearing *de novo* when an adjudication hearing was not held below. However, in our opinion, R. C. 3704.03(S) does not necessitate a formal evidentiary hearing under the present circumstances. Republic conceded that it was in violation of emission standards and agreed to take necessary steps to abate the violations. To require that a formal adjudication hearing be conducted, where there is no contest of the issues, would serve only to unnecessarily delay the attainment of national ambient air quality standards. The approach taken by the Director was the most expedient and allowable under law. The rights of the public are adequately protected by the right to appeal as discussed above. We conclude that the Board erred when it held the consent order invalid for failure to conduct proceedings to hear evidence that was not in dispute. The Director's Assignment of Error No. 2 is sustained.

*Director's Assignment of Error No. 3:*

"The Envioronmental Board of Review erred in ordering the Director of Environmental Protection to issue to Republic Steel Corporation conditional operating permits pursuant to Section 3704.03(G), Revised Code, and OAC 3745-35-02(H) when the Coke Battery was not constructed and completed in accordance with a permit to install."

*Broadway's Assignments of Error No. 1 and No. 2:*

"The Environmental Board of Review erred in permitting the immediate operation of Coke Oven Battery No. 1 because the operation of that Battery, in its present condition, violates Ohio law, whether that operation is pursuant to the consent agreement appealed from, or pursuant to a conditional permit."

"The Environmental Board of Review erred in permitting the immediate operation of Coke Oven Battery No. 1 because the operation of a new source of air pollution in a non-attainment region, without the pollution controls required by law, is in violation of applicable federal statutes."

Central to the complaints of Broadway and the Director is Republic's failure to obtain a permit to install Battery No. 1. The acquisition of such a permit is a pre-

requisite to operation of any new air contaminant source.[9] O. A. C. 3745-31-02(A)(1), 3745-35-02(C)(5)(a).

R. C. 3704.03(G) and O. A. C. 3745-35-02(H) authorize new sources such as Republic to operate pursuant to a conditional operating permit to allow the holder of the permit to make necesessary adjustments or modifications. However, *such facility must have been built in accordance with a permit to install.* Republic's failure to qualify for a permit to install is fatal to its eligibility for a conditional permit. Moreover, pursuant to O. A. C. 3745-35-02(H), conditional operating permits are valid for a period not to exceed six months and are not renewable. The conditional operating permit mandated by the Board's order was in clear violation of these provisions—the permit was to be renewed at the end of sixty days and its expected duration was well beyond six months. Accordingly, we hold that the Board erred when it ordered the Director to issue a conditional operating permit for Battery No. 1.

Broadway also alleges that federal regulations (40 C. F. R., Section 51.18(b)) prohibit the construction of new sources such as Battery No. 1 in areas where national ambient air qualitty standards have not been achieved. That section is not a prohibition of such new sources of pollutants, rather it is a guideline to be utilized by the states when promulgating state implementation plans. Moreover, an interpretative ruling of the United States Environmental Protection Agency, in 40 C. F. R., Section 51.18 has provided, in general, that:

"* * * a major new or modified source [may] locate in an area that exceeds a national ambient air quality standard (NAAQS) only if stringent conditions can be met. These conditions are designed to insure that the new source's emissions will be controlled to the greatest degree possible; that more than equivalent offsetting emission reductions ('emission offset') will be obtained from

---

[9]This court has previously determined that Battery No. 1 is a new source of air pollutants and not a mere replacement of Battery No. 5 as Republic contends. *Broadway Christian Church* v. *Republic Steel Corp.* (1976), 50 Ohio App. 2d 98, 103.

existing sources; and that there will be progress toward achievement of the N.A.A.Q.S. * * *" 41 Fed. Reg. 55524, 55528 (1976).

Battery No. 1 meets all of the standards. After considerable study and testing, Republic has contracted for the one spot car to be constructed for Battery No. 1, which, upon completion, is expected to achieve national ambient air quality standards. Indeed, the consent order entered by the United States Environmental Protection Agency has found this to be the case.[10]

The Director's Assignment of Error No. 3 is sustained; Broadway's Assignments of Error No. 1 and No. 2 are sustained only to the extent that Battery No. 1 is illegally operating under a conditional permit.

*Broadway's Assignment of Error No. 3:*

"The Environmental Board of Review erred in requiring public notice simultaneously with the operation of the new coke oven battery because 'simultaneous' notice fails to comply with both state and federal procedural statutory requirements."

The Board ordered the Director to immediately issue a conditional operating permit to Republic "citing therein as its evidentiary basis the facts adduced before the EBR in Case No. 76-24." In addition, the Director was ordered to issue public notice and obtain public participation in order to satisfy the requirements of Chapter 119 of the Revised Code and 40 C.F.R., Section 52.1879 during the sixty day duration of that permit. Prior to the expiration of that period, the Director was instructed to determine whether or not to issue a second conditional operating permit, authorizing operation until the earliest possible date that Republic can install necessary emission controls. Broadway contends that this order violates the federal notice requirements of 40 C. F. R., Section 52.1879.

In light of our holding that the Board erred in ordering the Director to issue a conditional operating permit for

---

[10]It should be noted that Broadway is currently challenging the federal consent agreement in a proceeding before the United States Court of Appeals for the Sixth Circuit.

Battery No. 1, this assignment of error dealing with notice on permits to install or construct new air pollution sources is rendered moot. Since we have concluded that a consent decree is an enforcement order intended to remedy violations of law, federal regulations dealing with permits are inapplicable.

Accordingly, the Director's Assignment of Error No. 3 is dismissed.

*Broadway's Assignments of Error No. 4 and No. 5:*

"The Environmental Board of Review erred by placing the ultimate burden of proof upon the appellants."

"The Environmental Board of Review erred by placing upon the appellants the burden of proof with respect to the economic reasonableness of the director's order, where the evidence necessary to prove such an assertion is peculiarly within the sole possession and control of Republic."

At the *de novo* hearing before the Board, the Board placed the *burden of proof* on Broadway while the burden of proceeding was imposed on Republic and the Director. The burden of proof may be defined as "[t]he necessity of establishing the existence of a certain fact or set of facts by evidence which preponderates to a legally required extent." *Martin* v. *City of Columbus* (1920), 101 Ohio St. 1, 9. In contrast, the burden of proceeding is "the obligation resting upon a party to meet with evidence a prima facie case created against him, that is, the duty of proceeding with evidence at the beginning or at any subsequent stage of the trial in order to make or meet a prima facie case." 21 Ohio Jurisprudence 2d 161, Evidence, Section 154.

Broadway cites to O. A. C. 3745-47-23(A)(1)[11] in support of the assertion that the burden of proof should have been on Republic. That regulation of the Director does not apply to proceedings before the Board. The procedural rules adopted by the Director govern "all adjudication

[11]That provision reads as follows:

"3745-47-23 *Burden of Proof—Evidence.*

"(A)(1) The burden of proof at all hearings with respect to applications, permits, licenses, variances, and certificates shall be upon the applicant."

hearings, public meetings, and other proceedings relating to adjudicatory acts *conducted by the Ohio Environmental Protection Agency* or by its duly authorized hearing examiners. * * *" (Emphasis added.) O. A. C. 3745-47-01. The Environmental Board of Review, however, is an appellate review board, *separate and distinct* from the O. E. P. A. O. E. P. A. Law & Regs. EBR i (1977).

When an ajdudication hearing is conducted by the Director, on appeal the Board acts as an appellate agency and reviews the evidence presented below. However, when the Director does not conduct an adjudication hearing, as is the case here, the Board must hold a hearing *de novo*. R. C. 3745.05; O. A. C. 3746-7-01; *Union Camp Corp.* v. *Whitman* (1975), 42 Ohio St. 2d 441. The procedure at the *de novo* hearing is the same as if there had been no prior proceedings. *Farrand* v. *State Medical Board* (1943), 46 Ohio Law Abs. 14, 16. Although the regulations of the Director do not apply to proceedings before the Board, when there has been no prior hearing, the burden of proof at the *de novo* hearing is on the applicant for the permit. Therefore, we hold that the Board erred when it imposed the burden of proof on Broadway. Broadway's Assignments of Error No. 4 and No. 5 are sustained.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

Stillman, P. J., and Krupansky, J., concur.

Stillman, P. J., concurring. I join in the determination of the court with respect to the issues presented upon appeal, but I would add two additional observations which I believe are pertinent to the case.

The first is my view that the determination at which we have arrived is primarily predicated on pragmatic rather than specifically legal considerations.

Republic Steel undertook to construct a facility without having received the requisite permit. Its construction in this regard has now been condoned by the Director of the

Environmental Protection Agency of Ohio and this court. I do not believe that such a disregard of the law should be summarily dismissed as insignificant in terms of its potentiality for future abuse. The case before us is not limited in its implications to the specifics of this single occurrence. If we are to genuinely seek the protection of the environment which we profess through the enactment of comprehensive legislation and the establishment of appropriate enforcement agencies, it is necessary to support both the statutes and the agencies through a meaningful application of the law. In the instant case, Republic has promised to install the necessary systems to assure the adequate control of noxious emissions by September 1, 1978. Presumably, this will be done. If, however, further action on behalf of environmental protection groups becomes necessary after that date, this decision may prove unwarrantedly precedential in inhibiting aggressive action.

The second concern which I wish to express relates to the current confusion and overlapping which has developed in the area of environmental control. The fact that both the federal government and the several states are currently seeking to legislate through congressional enactments and statutory law gives rise to the possibility of conflicting judgments and endless litigation. As we have noted in this opinion, the environmental groups in this case are currently contesting a federal consent agreement in the United States Court of Appeals for the Sixth Circuit. Such a process of seemingly vexatious litigation must lend urgency to a resolution of conflicts of this kind. It is possible that the Sixth Circuit case may alter the significance of the decision herein, all to the prejudice of efforts to solve the problems with which we have struggled. It would seem highly desirable in this area for the adoption of uniform state and national legislation to deal with the expanding field of environmental protection. *See, State Environmental Policy Acts: A survey of Recent Developments,* 2 Harv. Environmental L. Rev. 419 (1977); *see also, The Environmental Impact Statement Requirement in Agency Enforcement Adjudication,* 91 Harv. L. Rev. 815 (1978).