NORTH SANITARY LANDFILL, INC., APPELLEE, *v.* NICHOLS, DIR., ET AL. APPELLANTS.

332

(No. 8246—Decided
February 8, 1984.)

Mr. John W. Edwards, for appellee.

Mr. Anthony J. Celebrezze, Jr., attorney general, and Mr. Michael Donovan, for appellant Director of Environmental Protection.

Mr. Lee C. Falke, prosecuting attorney, Chris R. Van Schaik and Mr. Kenneth R. Pohlman, for appellant Montgomery Cty. Bd. of Commrs.

Per Curiam. North Sanitary Landfill, Inc. filed a verified complaint pursuant to R.C. 3745.08 with the Director of Environmental Protection on January 20, 1982. The complaint was investigated by the Regional Air Pollution Control Agency of Montgomery County (RAPCA) and by the Division of Air Pollution Control, Ohio Environmental Protection Agency (EPA). Based on the investigations, the director determined that the violations alleged in the complaint did not or would not occur, and he therefore dismissed the complaint on April 12, 1982.

By notice of appeal filed May 4, 1982, North Sanitary Landfill appealed the action of the Director of Environmental Protection. Following a de novo hearing on the matter, the Environmental Board of Review issued its findings of fact and final order on February 8, 1983. In its final order, the board found that the action of the director in dismissing the verified complaint was unreasonable and unlawful. The board therefore "vacates the Director's final action dismissing the Verified Complaint and orders the Director to require the Commission to comply with the PSD, Emission Offset, and Ohio PTI preconstruction review and permitting requirements prior to commencing work on its program to rehabilitate, retrofit and reopen the South Reduction Plant as an incinerator."

From the order of the Environmental Board of Review, the Montgomery County Board of Commissioners and the Director of Environmental Protection have appealed to this court under R.C. 3745.06. Appellee, North Sanitary Landfill, has not filed a brief in this case. Consequently, pursuant to App. R. 18, we shall accept the Montgomery County Board of Commissioners and the Director of Environmental Protection's statement of the facts and issues as correct.

Appellants' statement of the facts recites that Montgomery County owns a refuse handling facility, the South Reduction Plant, located in Moraine, Ohio. The plant is equipped with two rotary kiln refuse incinerators. The incinerators at the South Reduction Plant commenced operation in 1970. In August 1979, the county suspended operation of the incinerators. The facility is currently being used as a refuse transfer facility.

In 1981, the county, via resolution, authorized the purchase and construction of "turn-key incinerator air pollu-

tion control systems" (electrostatic precipitators), and the expenditure of several hundred thousand dollars for maintenance and repair of the incinerators.

Appellants' statement of the facts also reflects that the county commissioners intended to continue to operate the incinerators at the reduction plant, that any "shutdown" was for maintenance and repair purposes only, and that as soon as the repairs were made the incinerators would resume their operation. The commissioners issued resolutions authorizing and contracting: (1) for the preparation of an incinerator decommissioning report, (2) for repairs to the roof over the incinerators, and (3) advertising for bids for, approving specifications for, declaring the necessity of, declaring the county's policy towards, and authorizing construction of, electrostatic precipitators and incinerator repairs.

The decommissioning plan received by the county reflected that the county commissioners authorized the Sanitary Engineering Department of the county to implement steps to preserve the incinerators. Among these preservation steps were roof repairs, replacement of doors and windows, repair of water leaks, pipe insulation, motor exercise, and maintenance of minimum building temperatures during winter months. Additionally, correspondence from the Montgomery County Sanitation Department to regulatory agencies reflected a clear intention by the county to continue to use the incinerators, and the Regional Air Pollution Control Agency continued to carry the incinerators on its emission inventories as temporarily shutdown.

The evidence demonstrates that the proposed maintenance and repair of the incinerators will not increase the maximum rate of capacity of the incinerators, the amounts and types of refuse burned, or the actual or allowable levels of air pollutants emitted, or result in the emission of any type of air pollutant not previously emitted, result in relocation of the incinerators, or result in an increase in the maximum permissible through-put or hours of operation.

Finally, the record reflects that the sources of emissions in this case are the incinerators themselves, and not the control devices, *i.e.*, the electrostatic precipitators.

For their first assignment of error, appellants argue:

"The Ohio Environmental Board of Review applied an erroneous standard of review, holding for NSL, Inc. despite the fact that the director's dismissal of the verified complaint was supported by a valid factual and legal foundation."

Under the first part of this assignment of error, appellants maintain that the Environmental Board of Review erred in holding that the incinerators would constitute "new sources" of air pollution subject to preconstruction review under state and federal regulation upon resuming operation.

Ohio Adm. Code 3745-31-02 stated, in pertinent part:

"* * * [N]o person shall cause, permit or allow the installation of a new source of air pollutants * * *; permit or allow modification of any source of air pollutants * * *, without first

"(1) applying for and obtaining a permit to install from the Ohio environmental protection agency."

"Source" was defined by Ohio Adm. Code 3745-31-01(O):

"* * * [A]ny machine, device, apparatus, equipment, operation, building, or other physical facility that emits or generates or may emit or generate any air or water pollutant."

Ohio Adm. Code 3745-31-01(F) defined "new source" as:

"(A) source for which an owner or operator undertakes a continuing program of installation or modification or enters into a binding contractual obliga-

tion to undertake and complete, within a reasonable time, a continuing program of installation or modification, after January 1, 1974."

Federal Prevention of Significant Deterioration regulations, Section 52.21, Title 40, C.F.R., and Emission Offset regulations, Section 51.18, Appendix S(I), Title 40, C.F.R., do not apply to a source installed in 1970.

We note initially that the Environmental Board of Review does not stand in place of the director upon appeal. Rather, the board must determine whether the action appealed from was lawful and reasonable. R.C. 3745.05. The Court of Appeals for Franklin County in *Citizens Commt.* v. *Williams* (1977), 56 Ohio App. 2d 61, 69-70 [10 O.O.3d 91], stated:

"Where the evidence demonstrates that the action taken * * * by the Director is reasonable and lawful — that is, the evidence reasonably supports the Director's action — the board must, in accord with R.C. 3745.05, affirm the Director even though it might have taken different action. The board initially does not stand in place of the Director upon appeal, and is not entitled to substitute its judgment for that of the Director, but is limited to a determination of whether the action taken by the Director is unreasonable or unlawful. Where the evidence demonstrates that it is reasonably debatable as to whether the permit should be granted, the board's duty is to affirm the Director, rather than merely to substitute its judgment for his. If the board properly determines the action of the Director to be unreasonable or unlawful, it then possesses power similar to that of the Director, by way of vacating or modifying the action of the Director to implement the appropriate action in accordance with the evidence.

"The initial power and duty of the board on appeal is not dissimilar to that of a court in an action seeking to enjoin administrative action. In such an action, the court necessarily conducts a *de novo* hearing so that all pertinent evidence may be adduced. However, a court cannot predicate its decision upon whether it agrees with the action taken by the administrative agency, or would have taken such action, but, rather, is limited to a determination of whether the action taken is unlawful, or constitutes an abuse of discretion under the evidence presented.

" 'Unlawful' means that which is not in accordance with law. * * *

" 'Unreasonable' means that which is not in accordance with reason, or that which has no factual foundation. It is only where the board can properly find from the evidence that there is no valid factual foundation for the Director's action that such action can be found to be unreasonable. Accordingly, the ultimate factual issue to be determined by the board upon the *de novo* hearing is whether there is a valid factual foundation for the Director's action and not whether the Director's action is the best or most appropriate action, nor whether the board would have taken the same action."

The board concluded that the South Reduction Plant should be treated as a new source of air pollution. As the basis for this finding, the board found: (1) county officials were able to avoid a lawsuit concerning air pollution violations by promising to shut down the plant, (2) in August 1979, the county commissioners shut down the plant and essentially abandoned the incinerators, following few guidelines for mothballing the plant, (3) county sanitary engineering staff worked with North Sanitary Landfill to site and size its landfill contemplating shutdown of the plant, and (4) two of the three county commissioners understood the shutdown of the incinerators would be permanent.

Contrasted with the findings of the board, the evidence in this case reflects

that the decision of the director that the start up of the South Reduction Plant would not constitute a new source of air pollutants because the plant was not permanently closed in 1979 was reasonable, lawful, and supported by evidence. Because the incinerators were installed in 1970, they thus would not constitute new sources under Ohio Adm. Code 3745-31-01(F), Section 52-21, Title 40, C.F.R., and Section 51.18, Appendix S(I), Title 40, C.F.R.

The second and third portions of appellants' first assignment of error maintain that the board erred in holding that (1) the subject incinerators were being "modified" in such a way as to be subject to preconstruction review under state and federal regulations, and (2) the county's proposed incinerator project, the installation of electrostatic precipitators, would result in significant net emissions increases.

The board found that emissions of new pollutants or increases in actual emissions of pollutants formerly admitted by the South Reduction Plant would result from physical changes in and changes in the method of operation of the South Reduction Plant. Among the physical changes listed by the board were the installation of new fans, removal of impingement trays from the wet scrubbers, conversion of the scrubbers to gas conditioning chambers, and replacement of the scrubbers with electrostatic precipitators.

Appellants initially argue that in regards to the electrostatic precipitators, there was testimony that they are not a part of the incinerators themselves, but are in fact add-on control devices, thus not constituting a physical change in or change in the method of operation of the incinerators.

Ohio Adm. Code 3745-31-01(E) defined "modification" as:

"(1) physical change in, or change in the method of operation of,

"(a) a source of air pollutants that

"(i) increases the amount of air pollutants emitted, or

"(ii) results in the emission of any type of air pollutants not previously emitted, or

"(iii) results in relocation of the source to new premises."

Any major modification subsequent to January 6, 1975, is precluded by Federal Prevention of Significant Deterioration regulations and Emission Offset regulations, in the absence of review and compliance with the regulations. "Major modification" was defined as:

"(i) [A]ny physical change in or change in the method of operation of a major stationary source that would result in a significant net emissions increase of any pollutant subject to regulation under the Act." Section 52.21(b)(2), Title 40, C.F.R.; Section 51.18, Appendix S(II)(A)(6), Title 40, C.F.R.

However, "[a] physical change or change in the method of operation shall not include:

"(a) Routine maintenance, repair and replacement;

"* * *

"(f) An increase in the hours of operation or in the production rate, unless such change would be prohibited under any federally enforceable permit condition which was established after January 6, 1975, pursuant to 40 C.F.R. Section 52.21 or under regulations approved pursuant to 40 C.F.R. Section 51.18 or 40 C.F.R. Section 51.24." Section 52.21(b)(2), Title 40, C.F.R., and Section 51.18, Appendix S(II) (A)(6),Title 40, C.F.R.

"Net emissions increase" was defined as:

"(i) * * * [T]he amount by which the sum of the following exceeds zero:

"(a) Any increase in actual emissions from a particular physical change or change in method of operation at a stationary source; and

"(b) Any other increases and de-

creases in actual emissions at the source that are contemporaneous with the particular change and are otherwise creditable." Section 52.21(b)(3), Title 40 C.F.R., and Section 51.18, Appendix S(II)(A)(7), Title 40, C.F.R.

We conclude that, based on the plain language of the applicable sections, physical change of a major stationary source does not encompass the change of air pollution control devices, in this case, from scrubbers to gas conditioning chambers. The change in the type of air pollution system utilized by the reduction plant does not affect the actual source of the air pollution, namely the incinerators. This court concludes, based on the use and definitions of source in issue, that the "sources" of the pollution are the incinerators themselves, and not the air pollution equipment. Therefore, any change in air pollution control devices attached to the source is not a physical change in, or change in the method of operation of, the source of air pollutants. In finding to the contrary and overruling the director in this regard, the board erred.

Additionally, not only must a "physical change" occur in the operation of the source, but a "modification" must occur before state and federal regulations require a preconstruction review. The evidence in the record also supports a finding that no "modification" took place of the South Reduction Plant. There is evidence that the plant, in any event, repaired and fitted with the electrostatic precipitators, will not: (1) increase the amount of air pollutants emitted nor result in a significant net emissions increase of any pollutant subject to regulations, (2) result in the emission of any type of air pollutants not previously emitted, (3) result in relocation of the source to new premises, or (4) increase the maximum permissible throughput or hours of operation.

The evidence also supports a finding that the work to be performed on the incinerators themselves, the sources of the air pollution, is strictly repair and maintenance of them.

The evidence demonstrates that the action taken by the director in concluding that the repair and change in the air pollution equipment at the South Reduction Plant would not constitute a major modification of the plant nor a new source of air pollutants was not unlawful or unreasonable.

The assignment of error is sustained.

Assignment of error number two is:

"The Ohio Environmental Board of Review erroneously imposed the burden of proof upon the Director of EPA and the Montgomery County Commissioners rather than upon NSL, Inc."

The Board of Environmental Review, in its February 8, 1983 order, stated in pertinent part in paragraphs six, seven and eight:

"6. Pursuant to the federal permanent shutdown policy, a source which has been closed for two years or more or whose emissions have been removed from state emissions inventories is presumed to have shut down permanently. * * * After this presumption is raised, the burden of proving that the shutdown was not permanent and of overcoming the presumption rests with the owner of the source. * * *

"7. Since the incinerators at the South Reduction Plant have been shut down for two years or more and since the source's allowable and actual emissions have been removed from Ohio's emission inventories, the South Reduction plant is presumed to have shut down permanently as an incinerator operation as a matter of law.

"8. Neither appellee, nor Intervenor, effectively rebutted this presumption."

Ohio Adm. Code 3746-5-30 reads, in pertinent part:

"(A) In proceedings before the Board, the burden of proceeding shall

rest with the party asserting the affirmative of any issue, except where the Board requires the other party to proceed because the Board is of the opinion that a party is in possession of facts or should have knowledge of facts relevant to the issue not available to the party asserting the affirmative."

The "burden of proceeding" is the obligation of a party to proceed with evidence at the beginning or at any subsequent stage of the trial in order to make a *prima facie* case. This can be contrasted with "burden of proof," the necessity of establishing the existence of a set of facts by evidence which preponderates to a legally required extent. *Broadway Christian Church* v. *Williams* (1978), 59 Ohio App. 2d 243, 254 [13 O.O.3d 249].

In this case, North Sanitary Landfill had the burden of proceeding, and it met that burden. The Environmental Board of Review cases cited to this court by appellants are in accord that the party bringing the appeal has the burden of proceeding. The cases do not state that the party bringing the appeal also always necessarily has the burden of proof. For instance, an applicant for a permit has the burden of proof, although the applicant may be an appellee in a case before the Environmental Board of Review, and thus the burden of proceeding is on the appellant before the board. See *Williams* at 255.

The board did not arbitrarily decide to refrain from its usual practice, because the appellant to the board, while he bears the burden of proceeding, does not necessarily have the burden of proof. Therefore, appellants' sole theory and argument in support of this assignment of error is not well-taken.

In this case, the board determined that appellee presented a *prima facie* case that the plant was shut down permanently. The board then found that the burden of proving that the shutdown was not permanent rested on appellants.

We note, in addition, however, that the director found the South Reduction Plant was not permanently shut down. Because the evidence in the record before the board provides a valid factual foundation for this determination, the director's decision should not have been overturned.

The assignment of error is overruled.

Assignment of error number three maintains:

"The Ohio Environmental Board of Review erred in failing to defer to Ohio EPA interpretation and application of applicable air pollution control laws, because Ohio EPA is the administrative agency with the responsibility for implementing and enforcing such laws."

As the Ohio Supreme Court stated in *Jones Metal Products Co.* v. *Walker* (1972), 29 Ohio St. 2d 173, 181 [58 O.O.2d 393], courts, when interpreting statutes, are required to give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which agency Congress has delegated the responsibility of implementing the congressional command. The same holds true for the Ohio General Assembly vis-a-vis Ohio Administrative Code sections relating to the EPA.

However, where the interpretation by the agency is repugnant to the statute, rule, or section, the regulation or interpretation should not be accepted by the courts. *Anderson Bros. Ford* v. *Valencia* (1981), 452 U.S. 205, 219.

Appellants board of county commissioners and Director of Environmental Protection first argue that the board's legal determination that the installation of any pollution control device is a physical change in or change in the method of operation of a source of air pollutants, arbitrarily cast aside statutory and regulatory interpretations of the Ohio EPA and RAPCA.

As this court stated under appellants' first assignment of error, based on the plain language of Ohio Adm. Code 3745-31-02, 3745-31-01, Sections 52.21(b)(2) and 51.18, Appendix S(II)(A)(6), Title 40, C.F.R., physical change does not encompass the proposed change at the South Reduction Plant from scrubbers to gas conditioning chambers. The change in the type of air pollution system utilized by the reduction plant is not a physical change in the method of operation of the statutory source, as the sources are the incinerators, not control devices. The agency's determination on this issue was therefore proper, and the board erred by ruling otherwise.

Concerning the repair and maintenance of the South Reduction Plant, whether or not such activities are a physical change in, or change in the method of operation of, a source of air pollutants, depends on whether the evidence reflects that the work done on the source is repair and maintenance, or a physical change in the method of operation of the source. This issue, in addition to the issue of whether or not the plant was permanently shut down, are issues of fact to be discerned from the actions and plans of the parties in relation to the plant. As such, no administratively formulated interpretation or policy was involved. Rather, the director and RAPCA, looking at the facts, determined that in this case, the reduction plant was not permanently shut down and the work to be done on the incinerators themselves was repair and maintenance. Again, such a finding is supported by the evidence.

Because the director was correct in his interpretation that a change in air pollution control devices does not constitute a change in the operation of a source, the assignment of error is sustained.

Assignment of error number four recites:

"The Ohio Environmental Board of Review erred in reviewing Montgomery County's compliance status with an order issued by the Montgomery County Court of Common Pleas because the Ohio Environmental Board of Review has no jurisdiction to review or enforce compliance with court orders."

On October 15, 1981, a consent judgment was entered into by the Board of County Commissioners of Montgomery County and the state of Ohio upon relation by the Attorney General. In pertinent part, the consent judgment provides:

"III.

"Plaintiff alleged in its complaint that Defendants have violated Chapter 3704, Revised Code, and Rules 3745-35-02, 3745-35-03, 3745-17-07, 3745-17-09 and 3745-15-07 of the Ohio Administrative Code, by operating incinerators at their * * * South Reduction Facility, 2550 Bertwynn Drive, Moraine, Ohio, in noncompliance with the terms and conditions of applicable variances, permits to operate and orders of Ohio EPA, in the absence of effective variances or permits to operate and in noncompliance with applicable particulate emission limitations and standards.* * *

"IV.

"Defendants are hereby permanently enjoined as follows:

"A. Defendants shall not operate the incinerators at their South Reduction Facility * * * until such time as such sources can be operated in full compliance with all applicable environmental statutes and regulations, including but not limited to applicable emission limitations and standards and licensing prerequisites."

The board concluded that the consent judgment was an order relating to air pollution, and could be enforced by any aggrieved or adversely affected per-

son by way of the verified complaint process under R.C. 3745.08(A). The board further found that North Sanitary Landfill was a person aggrieved or adversely affected by the county's program to rehabilitate and resume operation of the South Reduction Plant as an incinerator and therefore North Sanitary Landfill had standing to take action to prevent violations of the consent judgment by filing a verified complaint. Finally, the board concluded that rehabilitation of the South Reduction Plant and resumption of the incinerator operations at the plant without prior compliance with the preconstruction review and permitting requirements of the pertinent state and federal pollution laws and regulations would violate the express terms of Section IV(A) of the consent judgment.

The county maintains that North Sanitary Landfill lacked standing to bring this issue before the Ohio Environmental Board of Review. In the county's view, an administrative reviewing agency is a creature of statute, and has only such powers as are conferred upon it by the General Assembly. Thus, according to the county, the board does not have the requisite jurisdictional status to review decisions of common pleas courts.

The General Assembly has provided in R.C. 3745.08, that any person aggrieved or adversely affected by an alleged violation may file a verified complaint with the Director of Environmental Protection alleging that another person is violating or threatens to violate any law, rule, standard, or *any order* relating to air pollution. In this case, the consent judgment entered into by the county was an order relating to air pollution. Further, North Sanitary Landfill asserted that it would be aggrieved or adversely affected by an alleged violation of the consent judgment. Consequently, as the General Assembly, through its power to set forth the remedies for enforcement of judgments,

has permitted any person adversely affected by an alleged violation of any order to file a verified complaint with the director, the board, pursuant to R.C. 3745.08, may hear an appeal on this issue.

The fourth assignment of error is denied.

For their final assignment of error, appellants state:

"The Ohio Environmental Board of Review erred in holding that the director improperly delegated to the Regional Air Pollution Control Agency, the responsibility for investigating the subject verified complaint filed by NSL with the director."

The pertinent sections of the board's order pertaining to this assignment of error read as follows:

"1. The Director, under the circumstances, acted unlawfully and unreasonably in delegating his duty to investigate Appellant's Verified Complaint to RAPCA. (O.R.C. Section 3745.08).

"2. RAPCA's investigation was not objective, incomplete, not thorough and did not satisfy the requirements of O.R.C. Section 3745.08.

"3. RAPCA's recommendations to the Director regarding the disposition of Appellant's Verified Complaint were based upon material mistakes of fact and errors of law as noted elsewhere in these Findings and Conclusions.

"4. Therefore, the Director's decision to dismiss Appellant's Verified Complaint upon RAPCA's recommendation and report was unreasonable and unlawful."

In part, as the basis for this finding, the board stated earlier in its order:

"10. The Commission proceeded with the initial stages of its program to rehabilitate, retrofit and resume incineration operations at the South Plant without complying with the requirements of the Prevention of Significant Deterioration ('PSD') regulations and

New Source (and modification) Review regulations for 'non-attainment' areas ('Emission Offset' regulations) and without obtaining an Ohio Permit to Install ('PTI') based on informal advice from RAPCA* * *.

"* * *

"13. In October and November 1981, Appellant informed Intervenor of Appellant's opinion that the review and permitting requirements of the PSD, Emission Offset, and Ohio PTI programs needed to be met before the Plant could be rehabilitated and reopened and that significant increases in pollutant emissions would occur upon resumption of incinerator operations.* * *

"14. The Montgomery County Sanitary Engineering Department asked RAPCA, an agent of the Ohio Environmental Protection Agency ('Ohio EPA') to review Appellant's assertions* * *.

"15. RAPCA reviewed Appellant's allegations in November and December 1981, and concluded that they were without merit and represented this view to the Montgomery County Sanitary Engineering Department.* * *

"16. On January 19, 1982, Appellant filed a Verified Complaint with the Director of Ohio EPA ('Director'), pursuant to O.R.C. Section 3745.08, alleging that Intervenor was in violation of the PSD, Emission Offset, and Ohio PTI requirements.

"17. RAPCA investigated and responded to Appellant's Complaint in February 1982 and recommended that it be dismissed.* * *

"18. In effect, RAPCA investigated its own prior advice to Montgomery County* * *.

"20. RAPCA submitted a draft investigation report to Ohio EPA; Ohio EPA submitted comments to RAPCA upon the draft, which comments were incorporated into RAPCA's final investigation report. RAPCA submitted its final investigation report and recommendation for dismissal of the verified complaint to Ohio EPA on or about March 12, 1982.* * *

"21. RAPCA's final investigation report and recommendation were reviewed by three employees of Ohio EPA's Division of Air Pollution Control, one employee of Ohio EPA's legal staff, and Ohio EPA's Air Litigation Screening Committee. RAPCA's final investigation report was approved by those who reviewed it for Ohio EPA, and a recommendation was made to the Director to adopt RAPCA's report and recommendation.* * *

"22. North Sanitary Landfill's ('NSL') motion to discharge RAPCA from the investigation of the verified complaint was reviewed by three employees of Ohio EPA's Division of Air Pollution Control and one employee of Ohio EPA's legal staff. It was determined that the motion was without merit and that determination was conveyed to the Director.* * *

"23. On April 12, 1982, the Director dismissed the verified complaint * * *."

R.C. 3745.08 grants the director the authority to delegate the responsibility for investigating a verified complaint. Based on this court's review of evidence presented in this case, we cannot say that the RAPCA investigation failed to be objective or was incomplete.

RAPCA conducted a thorough examination of the verified complaint, based on its, and Ohio EPA's, interpretation of the applicable statute and regulations. RAPCA's investigation was conducted with the view that the South Reduction Plant's pollution control equipment was not part of the source of air pollution, and that, based on its analysis, the work to be done on the incinerators was repair and maintenance work only. Based on the record before this court, the evidence reflects that a thorough investigation was done by RAPCA.

We note that because no "major modification" as defined by the applicable statutes and regulations occurred on the South Reduction Plant, as no physical change occurred in the method of operation of the source (incinerators), the director's actions in not looking to data concerning past and possible future emissions and net emissions of the plant, for the purpose of preconstruction review, will not support a showing that an incomplete investigation had taken place of the verified complaint.

Further, there is no evidence in the record to show that the investigation done by RAPCA was not objective. The review done by RAPCA for the county prior to the filing of the verified complaint does not, without more, support any finding that RAPCA was not objective in its subsequent investigation.

The assignment of error is well-taken.

In conclusion, the action taken by the director in dismissing North Sanitary Landfill's verified complaint filed pursuant to R.C. 3745.08 was reasonable and lawful and was based on an investigation of the verified complaint. Therefore, the February 8, 1983 order of the Environmental Board of Review is reversed, and the April 12, 1982 action of the Director of Environmental Protection is reinstated. This action by this court merely dismisses the verified complaint filed by North Sanitary Landfill with the director alleging certain specific violations of law. The county remains bound by its October 15, 1981 consent judgment issued by the Court of Common Pleas of Montgomery County, Ohio.

*Decision reversed.*

KERNS, WILSON and WEBER, JJ., concur.