DECISION.
{¶ 1} Appellant, Kathleen Weaver, appeals a decision of the Hamilton County Court of Common Pleas. The court of common pleas had affirmed a decision of appellee, the Ohio Department of Job and Family Services (ODJFS), regarding the amount of adoption-assistance benefits to which Weaver was entitled for her son, Jason. In her sole assignment of error, she contends that the trial court erred when it affirmed the agency's decision that contained a benefit rate that did not comport with the child's actual needs or the statutory guidelines. This assignment of error is not well taken.
 {¶ 2} R.C. 5101.35(A)(2) and (E) provide that an applicant, participant or recipient of assistance from a family services program who disagrees with an administrative decision of the director of job and family services may appeal that decision to the court of common pleas pursuant to R.C. 119.12. Haghighi v. Moody, 152 Ohio App.3d 600,2003-Ohio-2203, 789 N.E.2d 673; Theodus v. Theodus (Feb. 13, 1997), 8th Dist. No. 70805. In an administrative appeal pursuant to R.C. 119.12, a court of common pleas must determine whether the agency's order was supported by reliable, probative and substantial evidence and was in accordance with law. Our Place, Inc. v. Ohio Liquor Control Comm.
(1992), 63 Ohio St.3d 570, 589 N.E.2d 1303; Prinz v. Ohio Counselor Social Worker Bd. (Jan 21, 2000), 1st Dist. No. C-990220. The court must give due deference to the agency's resolution of evidentiary conflicts and may not substitute its judgment for that of the agency on factual issues. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108,407 N.E.2d 1265; Prinz, supra.
 {¶ 3} On factual issues, an appellate court's review is limited to determining whether the common pleas court abused its discretion in finding that the board's decision was supported by reliable, probative and substantial evidence. Pons v. Ohio State Med. Bd, 66 Ohio St.3d 619,1993-Ohio-122, 614 N.E.2d 748; Prinz, supra. On questions of law, however, the court reviews de novo. Univ. Hosp., Univ. of CincinnatiCollege of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339,587 N.E.2d 835; Haghighi, supra. *Page 333 
 {¶ 4} The Title IV-E Adoption Assistance Program set forth in Section 670 et seq., Title 42, U.S. Code, provides financial support for children who are adopted and have special needs. Ohio Dept. of HumanServ. v. Keene (Apr. 10, 2000), 5th Dist. No. 99-CA44; Weaver v. OhioDept. of Human Serv. (Aug. 16, 1999), Ham. Cty. C.P. No. A-9901284. This program is administered by the states subject to certain federal requirements. See Section 671, Title 42, U.S.Code.
 {¶ 5} Ohio has implemented this program through R.C. 5101.141.Keene, supra; Culler v. Ohio Dept. of Human Servs. (Feb. 12, 1996), 5th Dist. No. 1995CA00227. Former R.C. 5101.141(A), which was in effect at the time Weaver applied for benefits, provided that "[t]he department of human services shall act as the single state agency to administer federal payments for foster care and adoption assistance * * * and shall adopt rules to implement this authority. * * * A public children's services agency to which the department distributes Title IV-E funds shall administer the funds in accordance with those rules."[1]
 {¶ 6} Consistent with Section 673(a)(2)(C)(3), Title 42, U.S. Code, the Ohio Administrative Code provides that "[t]he amount of the adoption assistance (AA) payment is determined by negotiation and mutual agreement between the adoptive parent(s) and the public children services agency (PCSA) in accordance with rules 5101:2-47-36 and 5101:2-47-43 of the Administrative Code and must be based on the needs of the child, the circumstances of the adoptive family and the PCSA's adoption policy." Ohio Adm. Code 5101:2-47-42(A). Further, "[t]he payment rate for adoption assistance (AA) is determined on an individual basis for each eligible child." Ohio Adm. Code 5101:2-47-43(A). "The actual amount of AA payment for each child must be determined by mutual agreement between the PCSA and the adoptive parent(s). In determining the amount of payment, the PCSA shall consider the circumstances of the adoptive parent(s) and the needs of the child." Ohio Adm. Code 5101:2-47-42(C). But the maximum amount of the adoption-assistance payment shall not exceed the cost of the foster-care maintenance payment that would have been paid if the child had been in a family foster home. Section 673(a)(2)(C)(3), Title 42, U.S.Code; Ohio Adm. Code 5101:2-47-43(D).
 {¶ 7} To determine the amount the foster-care maintenance payment (FCM) would have been if the child had been in a family foster home, the PCSA shall do the following: (1) determine the appropriate FCM rate in effect for the PCSA; *Page 334 
(2) determine the amounts of any special, exceptional or intensive-needs difficulty-of-care payments as described in rule 5101:2-47-18 of the Administrative Code, and other allowable payments; and (3) divide the annual total of difficulty-of-care and other payments by twelve and add the quotient to the monthly foster-care board rate. Ohio Adm. Code 5101:2-47-43(E).
 {¶ 8} Ohio Adm. Code 5101:2-47-18(A) provides that a child with special, exceptional, or intensive needs receiving foster-care maintenance payments may be eligible for a supplemental difficulty-of-care payment. This payment is available to a child whom a Title VI-E agency has determined to have difficulty-of-care needs that require special parenting attention and care. The agency should offer these payments at three levels of intensity depending on the child's needs and the substitute caregiver's qualifications. The levels are (1) special needs, (2) exceptional needs, and (3) intensive needs. Ohio Adm. Code5101:2-47-18(B). The administrative code then goes on to provide detailed definitions of the children and caregivers eligible for each of these levels. Ohio Adm. Code 5101:2-47-18(B)-(I).
 {¶ 9} ODJFS determined that Weaver was entitled to a retroactive award of $62,901.74, which covered the years from the date Jason was adopted until the date benefits actually started. This amount was calculated from a per-diem rate of $32.57, plus a stipend for difficulty of care of $250 per month. Weaver now contends that this amount was inadequate to provide compensation for Jason's exceptional medical needs, that the agency failed to negotiate with her as required by the federal statutes and the Ohio Administrative Code, and that the method used to determine the difficulty-of-care payment did not comply with the system of three levels set forth in Ohio Adm. Code 5101:2-47-18.
 {¶ 10} The record shows that the Hamilton County Department of Job and Family Services (HCDJFS) divides the special-needs, exceptional-needs, and intensive-needs difficulty-of-care levels into intricately detailed subcategories. HCDJFS determined that Jason's medical conditions justified his classification as foster-care board-rate level seven had he been receiving foster-care services. It then awarded him the maximum benefits available for that level. The agency did not negotiate with Weaver because Jason received the maximum foster-care maintenance rate for a child with his medical conditions.
 {¶ 11} To reverse the common pleas court's decision affirming the agency's determination of benefits, we would have to invalidate HCDHS's system of levels. Weaver contends that the local agency's decision placing Jason in level 7 was contrary to the three-tiered system set forth in Ohio Adm. Code 5101:2-47-18. But nothing in that system prevents a local agency from developing subcategories based upon the three broad categories set forth in the administrative regulation. The use of such subcategories does not clearly contradict the *Page 335 
spirit and purpose of the rule. See State ex rel. Endlich v. Indus. Comm. (1984), 16 Ohio App.3d 309,475 N.E.2d 1309.
 {¶ 12} Courts must give due deference to an administrative agency's construction of a statute or rule that the agency is empowered to enforce. Unless the construction is unreasonable or repugnant to that statute or rule, courts should follow the construction given to it by the agency. Leon v. Ohio Bd. of Psychology, 63 Ohio St.3d 683,1992-Ohio-105, 590 N.E.2d 1223; Rose Hill-Chapel-Ciriello Funeral Homev. Ohio Bd. of Embalmers Funeral Directors (1995),105 Ohio App.3d 213, 663 N.E.2d 978; North Sanitary Landfill, Inc. v.Nichols (1984), 14 Ohio App.3d 331, 471 N.E.2d 492.
 {¶ 13} HCDJFS considered Jason's individual history and medical conditions in determining the level into which he should be placed. The administrative hearing examiner concluded that a higher per-diem rate was permitted only when a child fell into categories necessitating a greater degree of care than Jason required, such as being non-ambulatory or having AIDS. The $32.57 per-diem rate was based on the foster-care board rates for difficulty-of-care level seven, which HCDJFS based on the medical documentation provided by Weaver. The determination of what difficulty-of-care level that Jason's medical conditions justified was a factual determination to which we, as a reviewing court, must give deference. We cannot conclude that the court of common pleas abused its discretion in concluding that the board's decision was supported by substantial, reliable and probative evidence.
 {¶ 14} Further, the hearing officer also stated that no authority existed to permit a higher per-diem award than that established by the foster care board and that awarded to Weaver. She also interpreted Ohio Adm. Code 5101-2-47-42(A) as requiring negotiation only when a per diem less than the foster-care maximum is offered or if disagreement exists about the child's category of care. This was a reasonable interpretation of the statutes involved, and we cannot hold that the agency's decision was contrary to law.
 {¶ 15} This result is not changed by Family, Children and Adult Services Procedure Letter 58B, upon which Weaver relies. It pertains to Title IV-E foster-care maintenance-payment rate revisions. It states that "[b]ased on the results of an annual survey, all FCM rates described in Ohio Administrative Code (OAC) rules 5101:2-47-17, 5101:247-18 and5101:2-47-19 have been reviewed." It then sets forth various minimum and maximum rates that were effective September 30, 1999, some of which are higher than the rates received by Weaver.
 {¶ 16} In regard to this letter, the hearing officer concluded, "The minimum and maximum amounts given in that procedural letter are based on the results of the annual Foster Care maintenance survey taken within the counties in the *Page 336 
state. The counties are not required to hold to the maximum amounts given in the procedural letter as indicated by the agency's current Foster Care board rates."
 {¶ 17} This interpretation is in accord with Ohio Adm. Code5101:2-47-17(A). It states that "[u]niform statewide standards for per diem foster care maintenance (FCM) payments for public family foster homes and prefinalized adoptive homes have been established by the Ohio department of human services (ODHS). These rates shall be updated annually by the issuance of a "Family, Children and Adult Services Procedure Letter" and are the minimum and maximum amounts that can be authorized for FCM payments for a child placed in the substitute care settings described in this paragraph * * *." The rule then goes on to discuss how monies are to be reimbursed relating to federal funds provided for the program, if an FCM is above or below the amounts listed. It does not require the application of a statewide minimum or maximum foster-care maintenance payment in every situation. The agency is entitled to interpret its own documents. Its interpretation of the procedure letter was not contrary to the administrative rule, and therefore we must defer to that interpretation.
 {¶ 18} Finally, Weaver contends that the amount awarded was insufficient to meet the child's needs. The record does show that Jason has severe medical conditions requiring substantial amounts of treatment and that Weaver has incurred substantial expenses in treating these conditions. While we sympathize with Weaver's situation, the purpose of the adoption assistance program is to provide adoption assistance through a program of federal support for children with special needs that would otherwise discourage adoptions. Section 670, Title 42, U.S.Code;Ferdinand v. Dept. of Children and Their Families (D.R.I. 1991),768 F. Supp. 401. The key word is assistance. Nowhere does the act attempt, nor could it reasonably purport, to cover all medical expenses incurred by every special-needs child to be adopted. The act specifically states that adoption-assistance payments may not exceed the foster-care maintenance rates that would have been paid for the child. In this case, the amount of payments to which Jason was entitled based upon the foster-care maintenance rates in effect for Hamilton County was properly calculated. Accordingly, we overrule Weaver's assignment of error and affirm the common pleas court's decision that affirmed the decision of the administrative agency.
Judgment affirmed.
Doan, P.J., Hildebrandt and Gorman, JJ.
[1] We note that the current version of R.C. 5101.141 is not materially different, except that it reflects the change of the agency's name from the department of human services to the department of job and family services, and the amendments to the statute do not affect the disposition of this appeal. *Page 337