OPINION
{¶ 1} Appellants, "J.," "Q.," and "O." S., through their adoptive parents, Homer and Charlene S., appeal from the judgment of the Franklin County Court of Common Pleas. That judgment affirmed the decision of appellee, Ohio Department of Job and Family Services, that Franklin County Children Services ("children services") negotiated with appellants in good faith and made reasonable and sufficient offers regarding appellants' request for increased adoption assistance.
 {¶ 2} Homer and Charlene adopted J., Q., and O. in April 2002, after having provided a foster home for the children. The children are siblings with special needs due to emotional and behavioral problems. Because the children have special needs, appellants received adoption assistance of $500 per month for Q., $700 per month for O., and $500 per month for J. Appellants also received Medicaid for each child and $720 per year per child for respite needs.
 {¶ 3} Subsequently, appellants sought increased adoption assistance. Appellants explained the request for each child in three separate letters dated March 14, 2004. In the letters, appellants noted that after the adoption "it became necessary for [Homer] to seek employment to help `make ends meet.'" Appellants also indicated that Homer had only been able to find a part-time, grant-funded job "that could end at anytime[.]" Next, appellants described that the children's behavioral problems at school created times where either Homer or Charlene would have to leave work and come to the school to intervene. Appellants likewise stated that one of them would consistently have to miss work in order to stay with one child who had been suspended from school. Because of such circumstances, according to appellants, Charlene had "received counseling by her supervisor warning that continued loss of time from her job will result in her dismissal." Therefore, appellants indicated that:
* * * Through much deliberation[,] * * * [Charlene and Homer] have concluded that the need for one of [them] to [quit] [his or her] job now exists. [Homer and Charlene] further agree that [Homer] should be the one to [quit his] job; therefore [appellants] are respectfully requesting an increase in subsidy of $1,000.00. * * *
 {¶ 4} In the March 14, 2004 letters, appellants further stated that the increased adoption assistance would allow appellants to explore "other avenues of assistance" such as "frequent and [consistent] counseling, alternative educational services, and camps designed to meet the needs" of the children.
 {¶ 5} On March 17, 2004, children services requested that appellants submit a letter "stating your specific request" and "professional documentation supporting the services you are requesting." Children services also requested that appellants provide information regarding their finances.
 {¶ 6} On March 29, 2004, appellants submitted three separate letters detailing their amended adoption assistance request for each child. In the letters, appellants cited a rise in costs of living and a rise in overall costs of the children's daily living expenses, i.e., shoes, clothing, haircuts, hygiene, school lunches, and fuel needed to drive the children to and from various doctor appointments and to drive to and from school when the children exhibited "inappropriate behavior[.]" Appellants also submitted three separate professional statements of need from a physician indicating that each child would benefit from a therapeutic camp, and appellants noted that the camp costs $1,000 per child.
 {¶ 7} Appellants also submitted a financial statement that indicated that Homer had made $640 per month in gross pay and $527.42 per month in net pay. The statement also included Charlene's full-time salary.
 {¶ 8} Thereafter, on May 11, 2004, children services sent appellants a letter that denied appellants' request for amended adoption assistance. Children services stated:
* * * In order for [a]doption [a]ssistance to be increased the rationale must be based on the child's special needs. According to [children services'] policy, the [a]doption [a]ssistance will not be increased for the basic needs of the children, which include food, clothing, shelter, daycare, and extracurricular activities. Increases to the monthly stipend can be made in situations where your Insurance, Medicaid, or other resources are not available for your child's special needs.
 {¶ 9} However, appellants and children services later continued negotiations, and the parties discussed the children's behavioral problems and discussed Homer having to quit his job to be available for the children. Eventually, children services made two offers. The first offer would have increased the adoption assistance by the amount of monthly net income that Homer lost when he quit his job, $527.42. Children services would have divided the amount by three and would have provided an increase of $175.81 per child per month. The second offer would have made no increases in adoption assistance payments, but would have paid for monthly therapeutic services at $110 per child per hour. Children services would have paid for the therapeutic services for 12 months and then would have re-assessed the situation.
 {¶ 10} Nonetheless, appellants rejected both offers. Next, children services made another offer that combined the above two offers. Through the amended offer, children services would have increased the adoption assistance by $175.81 per child per month and would have also paid for the therapeutic services. Again, appellants rejected the offer and amended their position by stating that they wanted a total of $1,200 per month per child, an amount equal to the amount they received when they provided a foster home to the children.
 {¶ 11} After the impasse, appellants pursued an administrative appeal. Before the administrative appellate hearings, children services submitted a September 10, 2004 appeal summary. In the summary, children services confirmed that it first denied appellants' amended adoption assistance request because of children services' policy not to increase adoption assistance for the "basic needs of the family." Children services also indicated in the appeal summary that it told appellants that "if any additional services were not covered by Medicaid or private insurance they could contact the agency for consideration for Special Needs Assistance through our county funding." In noting as such, children services referenced a policy guide that states:
Increases to the monthly stipend can be made in situations where your Insurance, Medicaid, or other resources are not available for [the] child's needs. Increases will not be granted for the basic needs of the child, which include[:] food, clothing, shelter, daycare and extracurricular activities. * * *
 {¶ 12} However, children services stated that it eventually made the above-noted amended adoption proposals after reviewing the negotiations and the documentation that appellants submitted. Children services stated that it offered to cover Homer's lost income because he "quit his job to be available for the" children.
 {¶ 13} A state hearing officer conducted a hearing on appellants' administrative appeal. On September 29, 2004, the hearing officer rendered a decision and held that "the offers made by [children services,] i.e. increase in the adoption assistance for each child of $178.81 to cover loss of income and payment for therapeutic services of $110.00 per hour, per child due to behavioral concerns is an appropriate offer to meet the needs of each child." In its decision, the hearing officer did not specify actual costs of the children's daily living expenses.
 {¶ 14} Appellants appealed further to appellee's administrative appellate examiner. The examiner held a hearing and rendered a decision on October 21, 2004. In the decision, the examiner referenced state and federal law that governs adoption assistance to children with special needs. The examiner noted that, under federal law, the adoptive parents must establish that a change in circumstances has occurred in order for them to seek an amendment of adoption assistance. The examiner also indicated that a "resubmission of requests periodically for additional needs" is a "requirement" of the federal guidelines. Ultimately, the examiner upheld the state hearing officer's decision, and the examiner concluded that the state hearing officer properly found that children services negotiated in good faith and attempted to "provide for those needs of [appellants] that are supported by evidence." The examiner further concluded that appellants failed to establish their demands through "documentation of [appellants'] current needs."
 {¶ 15} Next, appellants appealed to the common pleas court. The trial court affirmed the administrative decisions below, and the trial court concluded that "[t]here is reliable, probative, and substantial evidence to find that [children services] has negotiated in good faith and that the increases offered are reasonable and sufficient to meet the increased costs of [a]ppellants."
 {¶ 16} Appellants appeal, raising three assignments of error:
Assignment of Error #1
THE TRIAL COURT ERRED IN FINDING THAT THE FRANKLIN COUNTY CHILDREN SERVICES HAD NEGOTIATED IN GOOD FAITH WITH THE ADOPTIVE PARENTS WHERE THE AGENCY FAILED TO CONSIDER THE FULL FINANCIAL NEEDS OF THE CHILDREN IN ITS ANALYSIS AND NEGOTIATION POSITION.
Assignment of Error #2
THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE FRANKLIN COUNTY CHILDREN SERVICES HAD VIOLATED 42 USC 673(a)(3) AND OAC 5101:2-47-43 THROUGH [ITS] STATED POLICY OF NOT PROVIDING ADOPTION ASSISTANCE TO MEET A CHILD'S "ORDINARY NEED[S] FOR FOOD, CLOTHING AND RECREATION."
Assignment of Error #3
THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE STANDARDS OF REVIEW WERE MISAPPLIED AT BOTH THE STATE COURT HEARING AND THE ADMINISTRATIVE APPELLATE LEVELS.
 {¶ 17} In their first assignment of error, appellants contend that children services failed to consider "the full financial needs" of the children during negotiations on appellants' request for amended adoption assistance. Thus, appellants argue that the trial court erred by finding that children services negotiated with appellants in good faith. We disagree.
 {¶ 18} In reviewing an administrative agency's order, the trial court determines whether the order is supported by reliable, probative, and substantial evidence and is in accordance with the law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110; Olander v. Ohio Environmental ProtectionAgency (1999), 134 Ohio App.3d 723, 727. In considering the trial court's decision, we have plenary review over questions of law. Olander at 727. Otherwise, our role is limited to determining whether the trial court abused its discretion in finding that the administrative agency's decision was supported by reliable, probative, and substantial evidence. Olander at 727. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 19} The Title IV-E Adoption Assistance Program set forth in Section 670 et seq., Title 42, U.S. Code, provides financial support for children, like J., Q., and O., who are adopted and have special needs. Weaver v. Ohio Dept. of Job Family Serv.,153 Ohio App.3d 331, 2003-Ohio-3827, at ¶ 4. The program is administered by the states subject to certain federal requirements. Id.; Section 671, Title 42, U.S. Code Ann. In particular, Section 673(a)(3), Title 42, U.S. Code Ann., states that adoption assistance:
* * * [S]hall be determined through agreement between the adoptive parents and the State or local agency * * * which shall take into consideration the circumstances of the adopting parents and the needs of the child being adopted, and may be readjusted periodically, with the concurrence of the adopting parents * * * depending upon changes in circumstances. * * *
 {¶ 20} Consistent with Section 673(a)(3), Title 42, U.S. Code, Ohio Adm. Code 5101:2-47-38(B) provides that amendments to adoption assistance "must be made by mutual agreement" between the adoptive parents and the children services agency "based on the needs of the child and the circumstances of the adoptive family." Likewise, in addressing adoption assistance, Ohio Adm. Code 5101:2-47-42(A) states that "[a] consideration of the child's needs and adoptive family's circumstances refers not only to such factors as the overall capacity of the adoptive parent(s) to meet the child's immediate and future needs (including educational needs), but to the ability to incorporate the child into the household in relation to the lifestyle, standard of living and future plans of the adoptive parent(s)." Similarly, Ohio Adm. Code 5101:2-47-43(A) states: "Consideration of the circumstances of the adoptive parent(s) pertains to the adoptive family's capacity to incorporate the child into their household in relation to their lifestyle, standard of living and future plans, as well as the overall capacity to meet the immediate and future needs (including educational) of the child."
 {¶ 21} Here, in support of their contention that children services failed to consider "the full financial needs" of the children, appellants first reference the May 11, 2004 letter wherein children services initially denied appellants' modified adoption assistance request upon explaining that: (1) adoption assistance is not "increased for the basic needs of the children, which include[:] food, clothing, shelter, daycare, and extracurricular activities"; and (2) "[i]ncreases to the monthly stipend can be made in situations where your Insurance, Medicaid, or other resources are not available for your child's special needs." In further support of their above contention, appellants note that when children services ultimately provided the proposed amendments, the agency merely made a proposal that generally covered each child, without regard for the children's specific needs.
 {¶ 22} We note that, in children services' September 2004 appeal summary, the agency acknowledged its policy of not providing adoption assistance increases to cover "basic needs" of adopted children, and the agency referred to its policy of increasing adoption assistance when insurance, Medicaid or "other resources" are not available for the children's special needs. Nonetheless, the summary also acknowledged that children services ultimately offered to provide adoption assistance amendments. Children services did not indicate in the summary that it made its proposals only to cover the children's special needs, and we cannot make such a conclusion considering that children services offered to cover the lost income that appellants sustained through Homer quitting his job. Likewise, appellants submitted no transcript of testimony or App.R. 9 statement of facts from the hearings below to allow us to examine whether children services made its proposals by only considering the children's special needs with no regard for the children's every day living expenses.
 {¶ 23} Appellants bear the burden of proving their assignments of error and, overall, establishing error and prejudice. See Economy Fire Cas. Co. v. Craft General Contr.,Inc. (1982), 7 Ohio App.3d 335, 337. Additionally, appellants are responsible for providing a record of facts, testimony, and evidence to support the assignments of error. Hurier v. OhioDept. of Transp., Franklin App. No. 01AP-1362, 2002-Ohio-4499, at ¶ 23; Volodkevich v. Volodkevich (1989), 48 Ohio App.3d 313,314. In this regard, and based on the above, we conclude that the record does not indicate that children services failed to consider the "full financial needs" of the children or failed to follow the above federal or state legal guidelines when it ultimately changed its position from the May 11, 2004 letter and made the amended adoption assistance proposals.
 {¶ 24} Next, in making the above challenge, appellants criticize children services' decision to cover Homer's lost income from his part-time job rather than from a full-time job, which he claims on appeal paid a higher salary of over $60,000 per year. However, we reject appellants' criticism, recognizing that appellants' financial statement did not reference the $60,000 salary and acknowledging that we have no transcript or App.R. 9 statement of facts of Homer's purported testimony indicating such a salary.
 {¶ 25} Lastly, in support of their above contention, appellants assert that children services "did not look to the actual expenses and needs of the [children] in determining an appropriate subsidy package * * * but simply looked to the original" adoption assistance amounts and made modifications from the original adoption assistance amounts. Similarly, appellants claim that, when children services ultimately proposed adoption assistance amendments, the agency failed to mention actual expenses of caring for the children. However, appellants provide no binding authority requiring such specificity in proposed adoption assistance amendments, and, as noted above, we cannot determine, without more, that by failing to mention such actual expenses, children services evinced a failure to consider the "full financial needs" of the children or failed to follow the above legal guidelines when the agency made the amended adoption assistance proposals.
 {¶ 26} In this vein, we note that appellants presented no specific calculations as to how they came to demand monthly adoption assistance of $1,200 per child. While appellants specified the $1,000 per child cost of therapeutic summer camp, they merely generally opined that they needed the monthly adoption assistance of $1,200 per child to help cover increased daily living expenses. Children services disagreed with the amount demanded, and, as noted above, appellants have not demonstrated that children services failed to consider the "full financial needs" of the children or failed to make the requisite legal considerations when the agency made the amended adoption assistance proposals.
 {¶ 27} Accordingly, based on the above, we conclude that the trial court did not abuse its discretion by finding that children services negotiated with appellants in good faith. Therefore, we overrule appellants' first assignment of error.
 {¶ 28} In their second assignment of error, appellants contend that the trial court erred by failing to find that children services violated Section 673(a)(3), Title 42, U.S. Code Ann., and Ohio Adm. Code 5101:2-47-43 through its stated policy of not providing adoption assistance amendments to meet a child's "basic" ordinary needs. In response, appellee argues that neither Ohio nor federal law explicitly requires children services to consider changes in a child's ordinary living expenses when modifying adoption assistance payments. However, we need not reach either appellants' or appellee's contention because, as noted above, the record does not evince that children services failed to consider the "full financial needs" of the children or that children services failed to comply with the requisite state and federal guidelines when the agency ultimately made its amended adoption assistance proposals. Because we conclude that the trial court did not err in rejecting appellants' above contention, we overrule appellants' second assignment of error.
 {¶ 29} In their third assignment of error, appellants contend that the trial court erred by failing to find that the state hearing officer and the administrative appellate hearing examiner misapplied requisite standards of review. Again, we disagree.
 {¶ 30} In challenging the standard of review by the hearing officer, appellants assert that the officer could not conclude that children services negotiated in good faith without first determining the actual cost of the children's daily living expenses. In support, appellants rely on Ohio Adm. Code5101:6-6-02(C)(10), which states that "[i]n regulating the conduct of the hearing," the hearing examiner must develop the "fullest possible record upon which to base all necessary findings of fact." However, in regards to Ohio Adm. Code5101:6-6-02(C)(10), we cannot properly review whether the hearing officer developed the "fullest possible record" given that we do not have a transcript or App.R. 9 statement of facts from the hearing to review all the information that the hearing officer obtained. See Hurier. Moreover, although the hearing officer did not calculate in its decision the actual costs of the children's daily living expenses, we acknowledge that the hearing officer ultimately concluded that children services' amended adoption assistance proposals were appropriate offers "to meet the needs of each child." We have no occasion to disturb the hearing officer's conclusion in light of our above finding that the record does not indicate that children services failed to consider the "full financial needs" of the children or failed to follow the above federal or state legal guidelines when it provided the amended adoption assistance proposals.
 {¶ 31} Next, in challenging the hearing officer's decision, appellants rely on Ohio Adm. Code 5101:6-6-02(C)(6), which mandates that, at the hearing, the hearing officer "shall state the issue to be heard, as it appears on the hearing request [and] [t]he issue shall always be whether the agency's action or inaction was in accordance with applicable regulations." Again, we do not have the appropriate record to determine whether the hearing officer stated the proper "issue to be heard" at the hearing. Hurier. Likewise, we need not conclude that the hearing officer failed to consider whether children services' "action or inaction was in accordance with applicable regulations" given our above conclusion that the record does not indicate that children services failed to consider the "full financial needs" of the children or failed to follow the requisite guidelines when it provided the amended adoption proposals.
 {¶ 32} In challenging the standard of review by the administrative appellate hearing examiner, appellants first assert that the appellate examiner erroneously concluded that the adoptive parents must establish a change in circumstances before seeking an amendment of adoption assistance. In support, appellants cite Ohio Adm. Code 5101:2-47-36(A), which states that adoption assistance "may be modified at any time in response to a proposal by either the adoptive parent(s) or [children services] if both parties agree to the change." However, the appellate examiner made the above statement upon referencing language in Section 673(a)(3), Title 42, U.S. Code Ann., which states that adoption assistance "may be readjusted periodically, with the concurrence of the adopting parents * * * depending upon changes in such circumstances." Regardless, we note that the appellate examiner did not discount appellants' claims for amended adoption assistance on the basis that they failed to demonstrate a change in circumstances. Indeed, the appellate examiner recognized that appellants attempted to "[provide] justification" for the proposed amended adoption assistance by referencing, in part, Homer's employment loss.
 {¶ 33} In further challenging the appellate examiner's standard of review, appellants claim that the examiner erroneously determined that a "resubmission of requests periodically for additional needs" is a "requirement" of the federal guidelines. In making this challenge, appellants cite Ohio Adm. Code 5101:2-47-42(A), which states that adoption assistance must be considered, in part, from the adoptive parents' capacity "to meet the child's immediate and future needs[.]" Regardless, such a determination from the appellate examiner was not the basis for the decision to affirm the hearing officer's decision. Rather, the appellate examiner concluded that the hearing officer correctly determined that children services negotiated in good faith. We need not disturb such a conclusion given our above finding that the record does not indicate that children services failed to consider the "full financial needs" of the children or that children services failed to follow the above federal and state legal guidelines when it provided the amended adoption assistance proposals.
 {¶ 34} Therefore, based on the above, we conclude that the trial court did not err by failing to find that the state hearing officer and the administrative appellate hearing examiner misapplied requisite standards of review. Thus, we overrule appellants' third assignment of error.
 {¶ 35} In summary, we overrule appellants' first, second, and third assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Sadler, JJ., concur.