GAITHER–THOMPSON, Appellant,

v.

OHIO CIVIL RIGHTS COMMISSION, Appellee.

[Cite as *Gaither–Thompson v. Ohio Civ. Rights Comm.*,
176 Ohio App.3d 493, 2008-Ohio-2559.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070488.

Decided May 30, 2008.

Tobias, Kraus & Torchia and David Torchia, for appellant.

Marc Dann, Attorney General, and Nicole S. Moss and Joseph N. Rosenthal, Assistant Attorneys General, for appellee.

---

DINKELACKER, Judge.

{¶ 1} Appellant, Diane Gaither–Thompson, appeals a common pleas court decision affirming the termination of her employment with appellee, Ohio Civil Rights Commission ("OCRC"). We find no merit in her sole assignment of error, and we affirm the common pleas court's judgment.

## I. Facts and Procedure

{¶ 2} OCRC assists citizens in addressing complaints of discrimination in employment and housing. A citizen files a discrimination charge, which is assigned to an investigator for review. The review process generally takes from seven months to a year. Once the investigation is completed, OCRC issues a finding of probable cause or no probable cause to believe that discrimination has occurred. It also conducts conciliations, which are meetings in which parties on opposing sides attempt to reconcile discrimination claims.

{¶ 3} Gaither–Thompson worked for OCRC from 1996 until 2004. At the time of her termination, she was a Civil Rights Field Supervisor 2. She specifically supervised two task-force leaders, Norm Gibson and Eric McCrary, who in turn supervised a number of investigators.

{¶ 4} In August 2002, Jean McEntire became the Regional Director and Gaither–Thompson's supervisor. She found that the Cincinnati office was in turmoil, with factions who disliked and distrusted each other. In October 2003, McEntire took Gaither–Thompson to lunch and told her that her behavior was contributing to the divisive atmosphere in the office. McEntire testified that several employees were regularly in her office crying and that a perception existed that Gaither–Thomson was "playing favorites" with her subordinates.

She asked Gaither–Thompson to help her alleviate the problem. According to McEntire, Gaither–Thompson defended the behavior of the employees she allegedly favored rather than agreeing to help remedy the problem.

{¶ 5} In November 2003, members of the OCRC executive team came to the Cincinnati office to speak with Gaither–Thompson about the problem. She stated that she perceived the team's message to be "agree with the director or suffer the consequences."

{¶ 6} In January 2004, McEntire placed Gaither–Thompson on a performance-improvement plan. The plan's purpose was to delineate Gaither–Thompson's job duties, as well as to modify the behavior that McEntire believed contributed to the divisive office atmosphere. The plan instructed Gaither–Thompson to conduct one-third of the conciliations assigned to the office, to monitor the caseload of subordinates, and to refrain from meeting with bargaining-unit employees behind closed doors. Gaither–Thompson interpreted the plan to be an instruction to "sit down, shut up and do her job."

{¶ 7} Gaither–Thompson failed to meet the plan's expectations. She conducted very few conciliations. She failed to assign work to her subordinates, failed to alleviate the workload of other subordinates, and failed to monitor deadlines that could have resulted in the loss of a citizen's discrimination claim. She met behind closed doors with Phyllis Hollis, one of her alleged favorites, who also had an unacceptably high caseload. Gaither–Thompson stated that she had been discussing a personal matter with Hollis and that she did not know how the door ended up being closed.

{¶ 8} Gaither–Thompson engaged in a series of e-mails with McEntire and others that McEntire considered to be rude and unprofessional. She also publicly scolded a front-office employee who was not under her supervision. After an attorney had complained about an investigator, she assisted the investigator in drafting a letter that was rude and discourteous. She signed McEntire's name to the letter without McEntire's knowledge and placed it in the outgoing mail. McEntire retrieved the letter before it was mailed and later informed Gaither–Thompson not to send letters with her signature in the future.

{¶ 9} Subsequently, Gaither–Thompson was on disability leave due to a knee injury. She unnecessarily involved herself in a work situation while she was on leave. She had an e-mail exchange with McEntire about working from home. In one of her replies, she told the director, "I'm not dead." She stated that she did not feel that statement was rude or terse.

{¶ 10} On her return from leave, Gaither–Thompson called McCrary and Gibson, her subordinates, into her office and said to them, "I know there is a fucking conspiracy to get rid of me and I know who the people are. I'm going to do whatever I need to do to protect myself." According to Gibson, she was

looking directly at him when she said this. He felt threatened and intimidated, and he complained to McEntire. McCrary stated that he did not feel intimidated. Gaither–Thompson admitted that the statement and the profanity were inappropriate, but stated that she was just "venting about her peers."

{¶ 11} After a predisciplinary hearing, OCRC terminated Gaither–Thompson from her position. It cited as reasons insubordination, failure to follow agency rules, refusing to carry out her assignments, making abusive statements, engaging in menacing or threatening behavior toward fellow employees, and discourteous treatment of the public.

{¶ 12} An administrative law judge ("ALJ") for the State Personnel Board of Review affirmed the agency's decision. The ALJ found that while none of the individual incidents of poor behavior alone justified termination, the cumulative effect of Gaither–Thompson's bad behavior justified her removal. Gaither–Thompson filed objections, and the board affirmed the ALJ's decision.

{¶ 13} Gaither–Thompson then appealed the board's decision to the common pleas court. A magistrate issued a report finding that the board's order was supported by substantial, reliable, and probative evidence. Gaither–Thompson filed objections to the magistrate's decision. In a thorough and well-reasoned decision, Judge Beth Myers overruled the objections and affirmed the magistrate's decision. This appeal followed.

{¶ 14} In her sole assignment of error, Gaither–Thompson contends that the trial court erred in finding that the board's order was supported by substantial, reliable, and probative evidence. She argues that the order was contrary to the manifest weight of the evidence, relied upon inferences improperly drawn from the evidence, and contained internally inconsistent findings and statements. She also argues that she was not disciplined for any of the individual incidents and that OCRC should have used progressive discipline. This assignment of error is not well taken.

## II. Standard of Review

{¶ 15} R.C. 124.34(A) provides that classified civil-service employees may only be discharged for cause.[1] The employee may appeal the disciplinary action to the state personnel board of review, and the board may affirm, disaffirm, or modify the appointing authority's judgment. The employee may then appeal the board of review's decision to the court of common pleas of the county in which the appointing authority is located, as provided by R.C. 119.12.[2]

---

1. *Baldwin v. Cincinnati,* 1st Dist. No. C–050292, 2005-Ohio-6994, 2005 WL 3557394, ¶ 6.

2. R.C. 124.34(B); *Swigart v. Kent State Univ.,* 11th Dist. No. 2004–P–0037, 2005-Ohio-2258, 2005 WL 1077176, ¶ 20.

{¶ 16} In an administrative appeal under R.C. 119.12, a court of common pleas must determine whether the agency's order was supported by reliable, probative, and substantial evidence, and was in accordance with the law.[3] The court must give due deference to the agency's resolution of evidentiary conflicts and may not substitute its judgment for that of the agency on factual issues.[4] But the court need not accept improperly drawn inferences from the evidence or evidence that is not reliable and probative.[5]

{¶ 17} On factual issues, an appellate court's review is limited to determining whether the common pleas court abused its discretion in finding that the agency's decision was supported by reliable, probative, and substantial evidence.[6] But on questions of law, the court reviews de novo.[7]

### III.  Substantial, Reliable, and Probative Evidence Supported the Board's Decision

{¶ 18} In arguing that the board's decision was not supported by the evidence, Gaither–Thompson relies heavily on her own version of events.  She contends that she did not intend to be rude or threatening, that she did not know that her behavior was construed that way, and that she had no warning that her behavior was unacceptable.  We disagree.

{¶ 19} The evidence showed, and the board found, that Gaither–Thompson had adequate warning that her behavior was unacceptable, even though she was never formally disciplined.  McEntire discussed her inappropriate behavior with her repeatedly.  Certainly, the performance-improvement plan told her what behavior her superiors expected of her, yet she failed to follow the provisions of the plan.  She is essentially arguing that her version of events was more credible. But in an appeal from an administrative agency, issues of credibility regarding

---

3.  *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303; *Weaver v. Ohio Dept. of Job & Family Servs.*, 153 Ohio App.3d 331, 2003-Ohio-3827, 794 N.E.2d 92, ¶ 2.

4.  *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265; *Weaver*, supra, at ¶ 2.

5.  *Prinz v. Ohio Counselor & Social Worker Bd.* (Jan. 21, 2000), 1st Dist. No. C–990200, 2000 WL 43707; *Hi Rise, Inc. v. Ohio Liquor Control Comm.* (1995), 106 Ohio App.3d 151, 153, 665 N.E.2d 707.

6.  *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748; *Weaver*, supra, at ¶ 3.

7.  *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343–344, 587 N.E.2d 835; *Weaver*, supra, at ¶ 3.

conflicting testimony of equal weight are generally for the agency, as fact-finder, to resolve.[8]

{¶ 20} The ALJ aptly summarized the evidence regarding Gaither–Thompson's conduct when she stated, "Appellant Gaither–Thompson testified that she had the feeling she was to 'come to work, do her job and shut-up.' Essentially that is true. While no one infraction committed by Appellant Gaither–Thompson is enough to remove her, all of the infractions together are enough. Had she just gone to work and done her job as a supervisor is expected to, then there would be no problem. However, she came to work and caused problems. Every chance she had to make work harder for the office and for Ms. McEntire, she took. * * * As an adult and in a supervisory capacity, Appellant Gaither–Thompson should have come to work, been a team player and not threatened or intimidated her subordinates and acted in a rude and discourteous manner to the public and her fellow employees. The energy wasted on responding to her curt, sarcastic e-mails, tracking down letters that should never have been mailed in the first place and calming employees down who have been subjected to her demeanor could have been better spent furthering the business of [OCRC]."

### IV. Progressive Discipline Was Not Necessary

{¶ 21} Gaither–Thompson also argues that OCRC never formally disciplined her for the incidents that led to her discharge. She contends that under OCRC's disciplinary grid, a first-time failure to comply with a performance-improvement plan required a verbal warning and that the agency could not terminate an employee until the fourth failure to comply. We find no merit in the argument.

{¶ 22} R.C. 124.34 describes the procedures governing an agency's termination of an employee in the classified civil service. It does not require the agency to follow the rules of progressive discipline unless the agency agrees otherwise in a collective-bargaining agreement.[9] Gaither–Thompson was not protected by a collective-bargaining agreement. Therefore, OCRC could have discharged her without following its disciplinary grid.

{¶ 23} The evidence showed that some sort of discipline would have been justified under the grid for each incident of misconduct. As the ALJ found, "Had Appellant Gaither–Thompson been disciplined after each and every incident, it would be clear to see that removal was warranted; however, the fact that

8. *Conrad*, supra, at 111, 17 O.O.3d 65, 407 N.E.2d 1265; *Sohi v. State Dental Bd.* (1998), 130 Ohio App.3d 414, 424, 720 N.E.2d 187.

9. *Swigart*, supra, at ¶ 27; *Carmichael v. State Personnel Bd. of Review* (June 10, 1993), 10th Dist. Nos. 92AP–1707 and 92AP–1708, 1993 WL 220885.

[OCRC] chose to wait hoping that her behavior would improve, does not rise to the level of an abuse of discretion."

### V. Summary

{¶ 24} We hold that the common pleas court did not abuse its discretion in holding that the board's decision was supported by substantial, reliable, and probative evidence. Further, we cannot hold that the board's decision was contrary to law. We overrule Gaither–Thompson's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

PAINTER, P.J., and HENDON, J., concur.